JAMES F. BOWZER, RESPONDENT, v. CORA BOWZER, APPELLANT.—155 S. W. (2d) 530.

Kansas City Court of Appeals.   November 3, 1941.

*Jos. J. Shy* for appellant.

*George N. Davis* for respondent.

BOYER, C.—In the above -entitled case, appellant (defendant below) was granted a decree of divorce upon her cross-bill and was awarded alimony in gross in the sum of $1000, and at the same time the trial court overruled as defendant's motion for counsel fees and suit money. This appeal is from that part of the decree awarding alimony and a denial of counsel fees and suit money.

Respondent (plaintiff below) instituted this action and sought a decree of divorce from his wife on the ground of various alleged indignities. To this action the wife filed a general denial, and the case was originally heard on June 13, 1939, and held under advisement by the trial judge.

Thereafter, and on February 14, 1940, by leave of court, defendant filed her motion to reopen the case for additional testimony and to be permitted to file an amended answer and cross-bill. This motion was sustained on April 24, 1940, the case reopened, and defendant granted leave to file an amended answer and cross-bill on or before April 27, 1940. The amended answer and cross-bill was filed in time.

After admitting allegations in reference to the marriage and the children of the parties the answer denies all allegations of indigni-

ties toward the husband, and counters with the relation of a long story of indignities to which she had been subjected by her husband, and a protracted period of intolerable domestic conditions, all of which were attributable to numerous flagrant violations of the marital contract on the part of the husband. The answer alleges that the husband was possessed of real and personal property and money to the value of $8000, and has a gross income of approximately $250 per month; and that the wife has been without sufficient income and means of support since 1938, and is without such income and means of support for herself and for the prosecution of the suit. The prayer of the cross-bill is the following:

"Wherefore, defendant prays to be divorced from the bonds of matrimony contracted with the plaintiff and that the court will adjudge to her out of the property of plaintiff such alimony and such support and maintenance for herself and for such time as the nature of the case and the circumstances of the parties may require, in the sum or sums not less than $4000.00; and that, if necessary, plaintiff may be compelled to give security for such alimony and maintenance; and that the court will make such further orders and judgments from time to time, touching the premises, as to the court shall seem meet and just."

The plaintiff filed a reply to the amended answer and cross-bill denying each and every allegation therein contained, and reaffirmed every matter set out in his petition and asked that he be granted a divorce according to the prayer of his petition.

The record shows that counsel for the wife had filed a motion for suit money and attorney fees at the beginning of the proceeding. It was never pressed. When the case came on for further hearing defendant had procured additional counsel, and the court was requested to grant leave to file another motion for additional attorney fees and suit money. The court indicated then that there appeared to be no sufficient ground for such motion for the reason that the wife had property, but nevertheless granted leave for the filing of such a motion. It was disposed of, heretofore recited, in the judgment rendered by the court in which such allowance was denied.

The appeal appears to have been taken in due time and proper manner and briefs have been filed by counsel for both parties. The brief of appellant is questioned for failure to comply with Rule 17 of this court which provides that the brief on behalf of appellant shall distinctly and separately allege the errors committed by the inferior court. It is strongly urged by respondent that there are no sufficient assignments of error in appellant's brief, and that there is nothing before this court to warrant a review. There is no statement of points upon which appellant relies for reversal of the judgment. The errors intended to be urged are not expressly or specifically stated, but are left merely to inferences to be drawn from the rules of law which are

set out under Points and Authorities. Ordinarily the criticism leveled against appellant's statement and brief could justly be sustained and the penalty of dismissal of the appeal applied. However, it is not difficult in this case to understand from the statements and briefs of both parties the definite matter in controversy, and tha appellant is questioning the inadequacy of the amount of alimony awarded and the failure of the court to allow suit money and attorney fees. Furthermore, this being a divorce case, it is the practice of appellate courts to review proceedings therein *de novo* and determine the right and justice of the matters in question, and whether the law has been properly applied by the trial court to the facts in the case. The significance of the court rules is modified by the nature of the case which involves the public intrest and places upon the appellate court the duty of making its own finding of facts and conclusions, subject only to such deference as should be accorded to the decision of the trial court. [Tebbe v. Tebbe, 21 S. W. (2d) 915; Kleine v. Kleine, 111 S. W. (2d) 242, 243.]

A statement of the material facts relative to the question of an adequate award of alimony and the denial of the motion for counsel fees and suit money is substantially the following:

There was evidence at both hearings of the case relative to the nature, character and value of the property owned separately by the husband and by the wife, as well as extended evidence as to how the property was acquired. It is agreed that the wife is holder of the fee simple title to eighty acres of land and in addition thereto owns a secured note for the sum of $500, and a Chevrolet car. The farm was originally purchased in 1922 or 1923, with funds which had been earned in various lines of endeavor by the joint efforts of both parties. In 1925, the husband deeded this eighty acres to his wife with restrictions for its use, and at the same time deserted her for a protracted period. At that time the parties were living in the town of Trenton. Thereafter the wife went to live on the farm with their two children. Afterwards, the restrictions upon the title were removed and it as agreed by all parties at the trial that the fee simple title to said eighty acres was then vested in the wife. The value of the eighty acres at the time of the trial was variously estimated, the husband claiming that it could be sold for $4000, and that that sum represented its value. The weight of the evidence, however, tendered by the wife and qualified witnesses, is to the effect that $1500 is the present reasonable value of the eighty acres in question. It was shown that the improvements were of negligible value, there being no habitable house and no other buildings except an old barn, cattle barn, and crib. A $500 note owned by the wife represented a sum which she had earned in conducting a lunch counter on the premises of the filling station operated by her husband. She conducted the business on her own account, and during said time furnished food

for the family at her lunch counter, at her expense, and accumulated a profit of $500 at the time the business closed. The Chevrolet car owned by her was a gift from one of her sons and her brother. It was described by her as a 1936 used car. The value was not shown. The wife had no income of any consequence. She said she had received no rent or income from the farm except about enough to pay the taxes and a check amounting to about $40, which had been obtained from the sale of hay by the husband from the farm. It appears that after the farm was deeded to the wife, and following the reconciliation over the desertion, the husband managed and handled the farm for several years and at one time realized approximately $700 from the sale of accumulated products. He also pastured the farm with livestock which he had purchased and realized a profit upon that venture said to amount to $600.

The wife was living in a residence property in the town of Macon which was owned by her husband, and for a period of about five weeks rented one room for $1.50 per week, and from her meager income earned her living by cultivating a rather extensive garden on vacant lots which adjoined and belonged to the residence property. She supported and maintained herself since the last desertion of her husband in 1938, with some assistance from her children.

The husband owns a filling station on Highway 36 near the junction of Highway 63. At the first trial, he estimated its value at $2500, but on the last trial he admitted that he had been offered $7000 for the station and adjoining lots and improvements which he refused, and admitted that the present worth was $4000. He owns the residence property in the City of Macon which consists of a dwelling house and five town lots. He admits its value to be from $1500 to $1800. His testimony showed that he paid $1600 for the house and lot upon which it stood and later acquired additional lots. He testified on the first hearing that the house and five lots were worth $2000. The filling station was rented to one of the sons for $75 per month and plaintiff was in business with the other son, under a partnership arrangement, for the transportation and distribution of gasoline and oil from Kansas. Out of this business he was paid a monthly salary amounting to $100, according to the testimony of his son, and had previously drawn dividends or profits from the business amounting to $2000. He owned a half interest in a transport truck the value of which is left uncertain by the evidence, except that it cost $3600, and that such transports were short-lived and required replacement frequently. He also owned a tank truck which was used for local distribution in the county which had an estimated value of $200 or $250, and a 1940 Chevrolet car that cost $825.

The testimony of the wife further shows that she has spent $275 of her own money for necessary improvements on the house where she was living, and had bought most of the furniture, some of which

was not paid for. Mrs. Bowzer also claims that she had accumulated, saved and earned from her own resources during the years while she occupied the farm a sum of approximately $500, which was used for the husband's benefit when they first moved to Macon and her husband entered the filling station business. During the interim between the first and second hearings of this case, it appears that the parties attempted to make a property settlement without reaching any agreement. During the first trial the wife was asking for the house and garden and $500. Before the conclusion of the last hearing the husband testified that he did not desire any order in reference to the residence property in which the wife was living, but that she could remain there until she died or married unless he had to sell it. His position appears to have been that if he were deprived of the ownership of that property it would affect his credit and his ability to raise money when needed and embarrass his business transactions.

To understand the theory of the trial judge in disposing of the case, and the basis upon which alimony was awarded, it will be helpful to quote at least a portion of what he said at the time the judgment was rendered:

"We have heard the evidence on the cross-bill. Mrs. Bowzer has received out of Mr. Bowzer's property that Grundy County land. It is valued here someone says from $1500 to $1800. Mr. Bowzer says it is worth $2250 to $2400. I have an impression, gentlemen, it is a good piece of land and I think it is worth something more than $1500. Then Mrs. Bowzer has worked at the filling station and earned $500 which the evidence in the former trial shows she has loaned out on a secured note. Now it is true that under the Married Women's Act money which the wife owns as a result of her separate labor is her own funds. That is true; yet she earned that money by absenting herself from the household where her duty as a wife called her to be and to that extent she earned that money on the time of her husband, and while she is entitled to it, legally it is hers, equitably she earned it on the time of her husband and equitably ought to be taken into account in adjusting these property rights of the parties. And there is not much property here, gentlemen. There is only a small amount owned by the plaintiff and we have to deal with cases on the basis of what property there is. Then the children are grown and have their own families. It is not a case where a wife is left with minor children to raise, where she would be to any considerable expense for them. The wife did have needs—she went and made some improvements up there in the home, after the pendency of the suit; and take her statement for it, that she expended $275.00. She has been occupying the home up there—some kind of arrangement between the husband—promise of the husband, but I can see owning that house in connection with the filling station there where it might be necessary to sell the home in

order to perfect an advantageous sale of the filling station property, . . . in view of the property that the wife has already received and taking into account the $275 that she has expended on the house and the whole situation, I think that the wife should have the divorce on the cross-bill with the property which she has already received and $1,000.00 in addition and to relinquish all here interest and right to the home or to any of his other property. I think that will be a fair division of it and will provide for the wife as well as the amount of property which the defendant owns. So that will be the order.''

From the foregoing it appears that the dominant idea in the mind of the court in awarding alimony was to make such an award as would be equivalent to an equitable partition, or distribution, of all the property of both parties, and that such division would adequately meet the legal responsibility of the plaintiff to provide reasonable maintenance and support for the defendant after the decree of divorce.

We are of opinion that the learned judge misconceived and misapplied the law under the facts in the case, and did not make such an award for alimony as would adequately provide for the support of the divorced wife in the future and did not make reasonable provision to guarantee the performance of the legal duty of the plaintiff to maintain and support the defendant during their joint lives.

Upon granting a decree of divorce to the wife, the justice and validity of which is not questioned, it became the duty of the court to make such order touching the alimony and maintenance of the wife, as from the circumstances of the parties and the nature of the case, shall be reasonable. [Sec. 1519, R. S. Mo., 1939.] The court may, in its discretion, decree alimony in gross or from year to year. [Sec. 1520, R. S. Mo., 1939.] When the wife obtains a decree for the husband's fault, the legal basis for the allowance of alimony is the obligation of the husband to support his wife. This obligation and legal duty arises from the marital contract, and continues not only during the period of the union, but when the union is dissolved for the husband's fault such obligation continues thereafter during the joint lives of the parties. Whether alimony is allowed in gross or from year to year, with monthly payments as generally required, it should appear that the allowance is adequate to meet the reasonable needs of the wife for sustenance, clothing, shelter and care due her in the station of life to which she had been accustomed, and within the ability of the husband to provide. She is entitled to such an award even though she owns property in her own right. [Stark v. Stark, 115 Mo. App. 436, 444.]

In this case the wife has sustained injury on account of a breach of the marital contract by the husband to support her. She is entitled to a judgment that will provide such support, and be reasonable

compensation to her for the wrong which she has suffered. [Nelson v. Nelson, 282 Mo. 412, 421, 423.]

The effect of the judgment in this case in awarding $1000 as gross alimony out of the property of the husband does not, in our opinion, make adequate provision for the future support of appellant. On the basis of the judgment, and the facts in evidence, she would have only an income which may be derived from the use of the $1000; and even though consideration should be given the value of her own estate, her income from that in all reasonable probability for some time at least, would be negligible. If the matter be permitted to rest as it now stands, in all likelihood, the appellant would be required, in the not distant future, to ive on the capital of the award and of her own estate.

The age, as well as the financial circumstances of the parties must be considered. Both of the parties at the time of the trial were forty-eight years old. Both have a reasonable expentancy of life for many years. It is a critical age for the appellant. No one can tell what her actual needs may be in the years to come. A medical or hospital bill might easily consume the total award which she has received.

Respondent is engaged in a profitable business from which he is receiving a salary and income of at least $175 per month, plus a profit, if any, in the partnership enterprise; and whatever income he may earn in his other activities, the exact amount of which is not shown. The partnership profits have been substantial. It is certainly reasonable to find upon the evidence in this case that respondent has an income of at least $200 per month. He has property approximating the value of $8000. An inference from all the evidence is that the respondent is possessed of energy and good management and unless his real property be encumbered in some manner detrimental to his necessary financial arrangements his business has a reasonable prospect of success in the future.

Under all the circumstances in this case, we think that it would be more beneficial, just and reasonable to award alimony in this case on the basis of what the statute calls ''from year to year,'' requiring monthly payments of an amount which would appear to be reasonable to meet the needs of the appellant. This for the reason that conditions may change, and when the alimony is awarded as such it may be increased or diminished at any time that the circumstances would justify such action. Such an arrangement would not encumber the property of respondent or be any hurt to his business or interfere with his earning power so long as he was not in default in the monthly payments.

We further find that under the evidence in this case an award of alimony from year to year, requiring the payment of not less than $50 per month on or before the first day of each and every month should be entered in this case, and that the judgment of the court

awarding alimony in gross and in the amount stated should be reversed with direction to enter a judgment such as we have indicated. This conclusion is reached not only in reference to what we deem to be the best interests of the parties in this case, but we also have in view the vital interest of the State in having a safe and secure provision for the maintenance of appellant, the obligation for which has arisen from the default in the marital relations, and to the end that appellant may not become dependent so long as respondent is able to support her. We find a valuable precedent in a learned opinion by Commissioner SUTTON for the St. Louis Court of Appeals in the case of Wells v. Wells, 117 S. W. (2d) 700, wherein an allowance of alimony in gross was found to be unsuitable to meet the necessities of the case and an award of monthly alimony was directed to be made.

There is no merit in the point made by appellant in reference to the court refusing to allow counsel fees and suit money. It appears that appellant has had a number of different attorneys, and was able to provide a full and adequate defense of the plaintiff's suit and the prosecution of her own. It further appears that counsel first representing her had received some payment, and at the second hearing she had obtained additional able counsel and was on an equal footing at least with her husband in the legal contest. The discretion of the trial judge in denying the motion for the allowance of attorney fees and suit money was not abused. The conclusion in this case is that the judgment of the trial court in granting alimony in gross should be reversed and the case remanded with direction to grant alimony payable from year to year and in monthly installments of not less than $50 on or before the first day of each month effective as of the date of the original judgment, less any payments which may have been made in that behalf.

The judgment disallowing suit money and counsel fees should be affirmed. The Commissioner recommends that judgment be entered as above indicated. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed in part and reversed in part and the cause remanded with directions as recommended by the Commissioner. All concur.