233 S.W.2d 777 (1950)
CODY
v.
CODY.
No. 27847.
St. Louis Court of Appeals, Missouri.
November 2, 1950.
Ennis & Saunders, Festus, for appellant.
J. W. Thurman, Hillsboro, for respondent.
McCULLEN, Judge.
This suit for divorce was brought in the Circuit Court of Jefferson County, Missouri, *778 by Herman J. Cody, hereinafter referred to as plaintiff, against his wife, Lydia G. Cody, hereinafter referred to as defendant. After a hearing the court awarded a decree of divorce in favor of plaintiff. In due time the defendant-wife filed a motion for a new trial which was overruled and she appealed. Defendant also filed a motion for attorneys' fees on appeal, which was taken under advisement by the court. The record does not show that any attorneys' fees were allowed but the statement is made in the brief filed herein for defendant (appellant) that defendant's attorneys were allowed $50.00 as a fee on appeal and $50 for costs of appeal and that the same has been paid.
Plaintiff's petition alleged that he was lawfully married to defendant on June 28, 1947, and continued to live with her as her lawful husband from said date until on or about August 11, 1948; that plaintiff faithfully demeaned himself and discharged all his duties as the husband of defendant and treated her with kindness and affection but that defendant offered unto him such indignities as to render his condition in life intolerable. The petition of plaintiff further alleged in substance that defendant was possessed of a mean and domineering attitude and continuously quarreled with him without just cause or excuse; that on one occasion she struck him with a vanity bench; that she was jealous and without just cause accused him of wrongfully associating with other women; that she attempted to dictate to him as to the type of work he should do and as to the hours he should spend in performing such work; that she objected to his work of driving a taxicab; that the separation which occurred on the 11th day of August, 1948, was the result of his wife's negging and domineering disposition with respect to plaintiff's employment; that the religious views of plaintiff and defendant differed "and due to the clashing of their religious views considerable unpleasantness developed; that defendant was unbending in her views and refused to make an effort to adjust the differences existing between plaintiff and defendant to the point where the marital relations could be continued." Plaintiff alleged that there were no children born of the marriage.
Defendant's answer admitted the marriage as alleged but denied that the separation occurred on August 11, 1948, and stated that the parties separated on that date but that they went back together twice thereafter in an effort to continue their married life. The answer denied that defendant disregarded her duties as the wife of plaintiff and denied that she offered him any indignities. Defendant also denied that she is possessed of a mean and domineering attitude, and denied that she quarreled with and nagged plaintiff without just cause or excuse.
Defendant admitted in her answer that she did strike plaintiff with a vanity bench, but alleged that this was done solely in self-protection, because on two occasions, shortly before said incident, plaintiff had come home intoxicated and had beaten her and blackened her eyes and she had reason to believe plaintiff was again going to beat and choke her; that they separated on August 11, 1948, but thereafter began living together in an effort to continue their married life; that there was never any serious trouble between plaintiff and defendant until plaintiff became employed as a taxicab driver, after which time plaintiff improperly associated with other women; that after plaintiff became a taxicab driver defendant was compelled to pay all the expenses of the home and even to lend money to plaintiff; that after plaintiff became a taxicab driver he drank intoxicating liquors to a greater extent than he did prior to the time of said employment.
Plaintiff testified that he and defendant were married in June 1947 and separated in August 1948; that he treated her like a wife when she would let him and with kindness and affection; that she nagged at him "all the time about other women" and accused him of running around with other women; that he did not run around with other women prior to the time of the separation; that defendant would have fits of temper in which she would tear up the furniture and scream and throw herself upon the floor; that on one occasion she struck him with a vanity bench; that he did not *779 remember the argument out of which said striking arose; that she objected to his work of driving a taxicab; that there were no children born of the marriage.
On cross examination plaintiff testified that when they were married he and his wife were working for the telephone company; that he had worked for that company for about eight years; that for about six months he did line work after which he began driving a taxicab; that his wife objected to his work of driving a taxicab because he did not bring any money home; that before he began driving a taxicab he and his wife had arguments. When asked about the circumstances under which defendant struck plaintiff, plaintiff testified that he did not know he had been struck until the next morning. In this connection plaintiff testified:
"Q. The fact is you came home drunk? A. I had some, but I think she was with me. We went to a dance.
"Q. That was one of the difficulties between you and her, that you became intoxicated frequently? A. Yes, sir, there was few times that I came home intoxicated that she hadn't been with me.
"Q. You don't mean to say she ever became intoxicated? A. Yes, sir, I do.
"Q. On one occasion when you were intoxicated, you beat her up and blacked her eye? A. Only to keep her from beating me up.
"Q. She told you that you must never strike her again? A. Yes, sir.
"Q. Another time you came home intoxicated and started to strike her and she picked up a bench and hit you over the head with it? A. I guess that is right."
Plaintiff further testified on cross examination that after the separation from his wife he began going with a woman with whom he had gone before the marriage; that since the time of the separation he had been running around with various girls; that he and his wife had no serious trouble over religion; that his complaint was "She wouldn't let me sleep. She threw a fit of temper. I would go in another room and she would be laying in there without any clothes on and I would have to put her back to bed."
Defendant testified that she was working for the telephone company in Festus, Missouri, and had been employed there for the past seven years; that during the first nine months of the marriage she and her husband got along all right but that after he started driving a taxicab their difficulties began; that after he began driving the taxicab she had to take care of all the household expenses and even loaned plaintiff money; that on the occasion when she struck plaintiff with a vanity bench she did so because she was afraid he was going to strike and beat her; that he was intoxicated at that time and had previously, when intoxicated, struck her and given her black eyes; that she tried to get plaintiff to stop driving the taxicab and obtain other employment; that she and her husband never had any serious trouble over religion; that she never threw any fits and did not throw herself on the floor; that she did not accuse him of running around with other women until the day before the separation; that on that day plaintiff told her he did not know whether he loved her and was going to live with his mother; that they were then staying with defendant's parents; that a few days later plaintiff called for her and asked her to go with him to his mother's home and told her that he had made a mistake and that she was the wife for him; that they were back together and stayed for about three days at his mother's home; that he then told her he would not see her any more; that she asked him what was the trouble and he said he did not know and that he had not figured things out; that she asked him if there was another woman and he answered, "Figure it out for yourself"; that she then went to her sister's home for several days; that after a short period of time plaintiff told defendant that he had changed his mind about everything and that he did not think that they could get along together; that he did not know whether he loved her and then left her; that on this last occasion defendant had been drinking.
*780 Certain general rules have been developed and established by the decisions of the courts of this state which govern appellate courts in determining actions for divorce on appeal. It would serve no useful purpose to list the many cases decided by our Supreme Court and Courts of Appeals setting forth and applying these general rules. A reference to a few of such cases will be sufficient for our purpose. It has been held and is the established law that an action for divorce, although strictly speaking a statutory action at law, is nevertheless analogous to a proceeding in equity and as such is triable de novo on appeal. It is the duty of an appellate court in such a case to review all the evidence and while it should give due deference to the findings of the trial judge, who has had the advantage of observing the demeanor and conduct of the parties and witnesses during the trial, it must nevertheless reach its own conclusions and render such judgment as the evidence in its own opinion justly warrants under the law. Bassett v. Bassett, Mo.Sup., 280 S.W. 430, 437, 438; Kistner v. Kistner, Mo.App., 89 S.W.2d 106. If after the appellate court has reviewed all the evidence it is convinced that the trial judge erred in his conclusions, it is the plain duty of such court to correct the error and render such judgment as the evidence warrants. Bassett v. Bassett, supra; Kistner v. Kistner, supra; Elder v. Elder, Mo.App., 186 S.W. 530; Haushalter v. Haushalter, Mo.App., 197 S.W.2d 703.
Applying the above mentioned rules to the record in this case, we find the conclusion inescapable that plaintiff failed to produce evidence justifying a decree of divorce in his favor. Defendant did not ask for a divorce but that does not deprive her of the right to resist the granting of a divorce to plaintiff. It must be said to the credit of plaintiff that he was very frank in the admissions he made throughout the trial with respect to his own conduct toward defendant. However, these very frank admissions, coupled with defendant's testimony, make it clear that defendant and not plaintiff was the innocent and injured party in their relations, and she would have been entitled to a divorce on this record if she had asked for such relief.
Plaintiff himself admitted that for a period of six months while he was employed as a cab driver he failed to bring any money home to help support himself and his wife. The testimony shows without dispute that the wife even loaned plaintiff money during that period; that plaintiff frequently became intoxicated and on two occasions beat up defendant and blackened her eyes. Plaintiff also admitted that since he and his wife separated he associated with various other women and in particular one woman with whom he had associated before his marriage to plaintiff. Such an admission relating to his own conduct after the separation, of course, could not have caused the separation, but, coupled with his answer to defendant, "Figure it out for yourself" when she asked if another woman was involved, tends to throw light on plaintiff's lack of proper consideration for his wife before the separation. It must be remembered that this testimony is not only undisputed but is frankly admitted by plaintiff himself. Hence, the matter of deference to the findings of the trial judge on the basis of his advantageous position in determining the credibility of the parties as witnesses is not involved to any great extent. It is true that defendant admitted that she struck plaintiff with a vanity bench on one occasion but plaintiff himself, testifying in relation to that episode, admitted that he was intoxicated; that he could not remember the cause of the quarrel between them and did not even remember that defendant had so struck him until she informed him about it the next morning.
Defendant's testimony in connection with said episode was that, remembering how plaintiff had beaten her and blackened her eyes on a former occasion when plaintiff had come home intoxicated, she used the vanity bench, not in anger, but solely in self defense.
Taking plaintiff's admissions together with defendant's testimony, it appears to be clear that the difficulties of the parties arose mainly out of plaintiff's conduct while he was engaged as a cab driver in becoming frequently intoxicated and failing to furnish *781 any money for the support of the home. This caused defendant to try to prevail upon plaintiff to quit the cab driving business and take up some other kind of employment. Defendant testified that she frequently tried to persuade plaintiff to give up the cab driving business and this is what plaintiff regarded as "nagging" on the part of his wife. Defendant testified that although plaintiff had ample funds when he was driving the cab, he wouldn't give any money to her; that they didn't have any quarrels up until the time plaintiff started driving the cab. Defendant denied that she quarreled with plaintiff over women; denied that she tried to dictate to plaintiff about the kind of work he should do and testified that she tried to have plaintiff quit cab driving and get a different job so that he would have a regular income. With respect to one of the occasions when plaintiff beat defendant and gave her black eyes, defendant testified that plaintiff thereafter apologized and said, "I didn't know what I was doing."
The question as to whether or not a plaintiff in a divorce action must show that he is an "innocent" as well as an "injured" party to be entitled to a divorce has been discussed in a number of cases, but there is some confusion as to just what the precise rule is. This arises from the peculiar wording of two sections of the statute on Divorce and Alimony, namely, Sections 1514 and 1522, R.S.Mo.1939, Mo. R.S.A. §§ 1514 and 1522. Section 1514, supra, after setting forth a long list of causes for divorce, concludes by providing: "the injured party, for any of the causes above enumerated, may obtain a divorce from the bonds of matrimony". In a subsequent section, namely, Section 1522, supra, it is provided that in all cases of divorce the guilty party shall forfeit all rights and claims under and by virtue of the marriage, after which the section proceeds as follows: "In all cases where the proceedings shall be ex parte, the court shall, before it grants the divorce, require proof of the good conduct of the petitioner, and be satisfied that he or she is an innocent and injured party." (Last emphasis ours.) On the face of the wording of the two sections supra, it would appear that only in ex parte proceedings is the petitioner required to prove that he or she is an "innocent and injured party." In Section 1514, supra, which enumerates the various causes for divorce there is nothing said about an "innocent" party at all. However, this confusion has been cleared up in the recent case of Chapman v. Chapman, Mo.App., 230 S.W.2d 149. In said Chapman case this court called attention to a very early case decided by our Supreme Court, namely, Hoffman v. Hoffman, 43 Mo. 547, wherein it was pointed out that the statutes under consideration originally provided that the "innocent and injured party" may obtain a divorce etc., and that on March 12, 1849, Laws of 1849, page 49, the Legislature had amended the section by changing the words "the innocent and injured party" to read "the injured party" etc. In said Hoffman case the court held that the statute should receive the same construction after the change as it had been given before the change, the court saying: "The least that can be required, if we would make the provisions of the statute harmonize with the principles of the law in other respects, would be to compel parties to come into court with hands so far clean, at least, that the opposite party is not entitled to the same redress from them. If both parties have a right to a divorce, neither party has. The court must discriminate between them; must say which is the injured party, and which is entitled to relief." Hoffman v. Hoffman, 43 Mo. 547, 549.
This court, after quoting the language above set forth from the Hoffman case, supra, went on to say in the Chapman case: "In recent years it has been held many times that the burden is on the applicant for divorce to show that he or she is an innocent party." (Citing many cases). Chapman v. Chapman, Mo.App., 230 S.W. 2d 149, 151. In the Chapman case, supra, the court in reversing the judgment therein said: "In this case respondent made no proof whatever that she was the innocent and injured party. This was a failure to prove a fact which the law cast the burden on her to prove. We are bound *782 by the law as it has been laid down throughout the years, and must reverse the judgment and decree. It is so ordered." Chapman v. Chapman, Mo.App., 230 S.W.2d 149, 151, 152.
In the case at bar we have a situation similar to that shown in the Chapman case, supra. That is, as we read the record, plaintiff has failed to show that he was an "innocent" party and is, therefore, not entitled to a divorce.
By the use of the word "innocent" we do not wish to be understood as holding that a plaintiff in a divorce action must prove that he or she is wholly free from all fault in order to prevail. What the courts have meant and what we mean by the use of the word "innocent" in this connection is that the party seeking a divorce must adduce evidence in relation to his or her own conduct showing that he or she has not been guilty of any such conduct as is set forth in Section 1514, supra, as grounds or causes for divorce. In other words, a divorce action being analogous to a proceeding in equity, the equitable principle is applied which requires the complaining party to come into court with clean hands. If such party fails to do this, he or she will be denied the relief sought.
What plaintiff referred to as defendant's "nagging" was provoked and brought on by plaintiff's own course of conduct toward defendant. No self-respecting wife could reasonably be expected to submit without protest to such conduct on the part of her husband as this record shows plaintiff was guilty of toward defendant. The record clearly shows that plaintiff inflicted upon defendant gross indignities sufficient to make her condition as his wife intolerable and he is, therefore, not entitled to a divorce. An affirmance by us of the judgment herein would cast upon defendant, in the permanent records of the court, the blame for the abrogation of the marriage contract, with all the unfavorable legal consequences to her provided in Section 1522, supra. The evidence does not warrant such a result.
Having reached this conclusion after a careful consideration of all the evidence, it is our plain duty to reverse the judgment of the trial court and remand the cause with directions to said court to enter its judgment and decree in favor of defendant, dismissing plaintiff's petition. It is so ordered.
ANDERSON, P. J., and HOUSER, J., concur.