Evalon M. Sieve NORTHRUP, Plaintiff-
Appellant,

v.

William F. SIEVE, Defendant-Respondent.

No. 35719.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Dec. 17, 1974.

Thomas J. Briegel, Union, for plaintiff-appellant.

Polite & Thayer, Washington, for defendant-respondent.

SIMEONE, Presiding Judge.

This is an appeal from a judgment of the circuit court of Franklin County entered on September 17, 1973, denying plaintiff-appellant's, Evalon M. Sieve Northrup's, motion filed on December 8, 1972, to modify the child custody provision of a divorce decree entered January 18, 1967. The motion prayed for permanent custody of the two children born of the marriage or in the alternative to "permit reasonable rights of visitation with the children and to permit the children to visit with her. . . ." For reasons hereinafter stated, we affirm the judgment of the trial court.

Plaintiff, Evalon M. Sieve Northrup, and defendant, William F. Sieve, were divorced in the circuit court of Franklin County on January 18, 1967. The original order awarded custody of the couple's minor children, Phyllis, age thirteen, and Melanie, age eleven, to defendant subject to the right of the plaintiff "to visit with said children and have said children visit with her at reasonable times until the further order of this Court."

In support of her motion, Evalon claims that although at the time of the original decree defendant, William, was in the best position to have custody of the children since he was living with his parents, the circumstances have since changed. Plaintiff has since remarried on July 29, 1972, to Mr. Northrup and she and her husband are financially able to care for Phyllis and Melanie and will provide them with a good home and the love and attention the children need. Plaintiff further contends that William and his present wife have attempted to destroy the relationship between her and her daughters by denying and interfering with her visits.

Subsequent to the divorce and prior to trial in September, 1973, Mrs. Northrup visited with the children five times at the home of Mr. Sieve who was then remarried to Gwendolyn Sieve. The visits were for very short periods of time. Each visit by Mrs. Northrup was at the home of Mr. and Mrs. Sieve, and did not occur outside their home.

It is not necessary to go into all the detailed complicated facts brought out at trial. Suffice it to say that the thrust of the plaintiff's-Evalon's contentions in support of her motion to modify either for permanent custody or reasonable rights of visitation with the children was that she had been denied such reasonable visitation rights by her husband and his second wife. In the six years since the divorce in 1967 and prior to trial in September, 1973, Mrs. Northrup, as stated, had only visited with her children five times—in 1967, 1970, 1971, 1972 and 1973, and then only on a single day for a short period of time.

After the divorce in 1967, Mrs. Northrup moved to Detroit, Michigan, held several jobs, lived in numerous residences, informed her former husband and children where she was located, and sent numerous cards and gifts to her children by registered mail. After several employment positions and residences, she was married to Mr. Northrup in July, 1972. They have a comfortable home in Westland, Michigan, and Mr. Northrup has visitation rights with his daughter by a former marriage at their home at numerous times. She and her new husband, Mr. Northrup, expressed

love and affection for the children, indicated that they could offer a good new home to them and near proper medical and educational facilities. Mr. Northrup indicated that he was willing to take on these additional responsibilities, and Mrs. Northrup testified that there would be no problem returning the children to Missouri if she were allowed to have the children in Michigan and would obey the court's orders to a "T".

As is usual in such cases, there are charges and countercharges concerning the right to and denial of visitation rights,[1] statements and counterstatements, and allegations and counter-allegations of mistreatment and abuse of the children, and different versions of specific instances which strained the relationship of the parties. Mrs. Northrup contended she has been denied visitation rights to her children, and the father, Mr. Sieve and his new wife contend that they have not denied such rights, rather the children preferred to visit with their mother in the home of their father and stepmother. They contend they never denied visitation rights, but on the advice of their attorney preferred that the visitation did not take place outside their home. Defendant claims that he had reason to believe that plaintiff would take the children out of state and that he was acting on the advice of his attorney in requiring visitation rights in his home.

The children's maternal grandparents testified and indicated that they were in-

hibited from visiting their grandchildren because of the influence and domination of the present Mrs. Sieve. The former attorney of Mr. Sieve also testified. There was some evidence that if Mrs. Northrup were permitted to visit the children outside of Mr. Sieve's home, she "might take those children out of the state." The former attorney for Mr. Seive testified that he met with the children in private and the children indicated that they had "much apprehension" about visiting with their mother outside Mr. Sieve's home, and that in fact "one child cried". He advised that visitation rights of Mrs. Northrup not be made outside the home of Mr. and Mrs. Sieve.

After hearing all the testimony, which included testimony by the children's teacher and neighbors, all indicating that the children were "remarkable" and "well groomed girls", and after an attempt to discuss the situation with the former attorneys of both parties (which according to the record was not done), the trial court denied the plaintiff's motion for full custody or "in the alternative at least permit reasonable rights of visitation with the children and to permit the children to visit with her [plaintiff]." Plaintiff, Evalon, appealed the order to this court.

The appellant, Mrs. Northrup, contends on this appeal that the trial court erred in failing to permit "temporary periods of visitation outside the State of Missouri" where the facts clearly warranted that the children would be properly cared for.[2]

---

1. On one occasion in 1970, Mrs. Northrup visited the children and wanted to take them to dinner. She and the children were in the living room and Mr. and Mrs. Sieve were in the kitchen. Mrs. Northrup asked the children if they would like to go to dinner. Mrs. Northrup testified that her youngest daughter stated that "We're supposed to tell you that we don't want to go." So Mrs. Northrup did not pressure them. The second Mrs. Sieve "crossed her arms" and said, "You know we talked about this before." Phyllis started crying and Mrs. Northrup said, "Let's forget the whole thing, we will stay right here." On another occasion in 1972, Mrs. Northrup and her mother visited the Sieve home to visit the children, but the

visit was short and marred by the request to have Mrs. Stokes (Mrs. Northrup's mother) park her car off the property.

There were similar instances involving the grandparents of the children.

2. The thrust of the plaintiff's motion was to transfer permanent custody to her or "in the alternative at least permit reasonable rights of visitation with the children and to permit the children to visit with her. . ." But the original decree in 1967 provided that the father, Mr. Sieve, have custody of the children and "that plaintiff [Mrs. Northrup] have the right to visit with said children and have said children visit with her at reasonable times." The issue of visitation out-

The husband-respondent, Mr. Sieve, on the other hand, contends that it is against the policy of the law to permit the children to be removed to another jurisdiction unless it is in the interests of the children of divorced parents, and in any event, the trial court's decision is not to be lightly disturbed and the evidence does not show such a material change of condition that requires a modification of the original decree.

■ This is a court-tried case. On appeal from a judgment denying a modification of a decree awarding custody of the children to one of the parties, the appeal is de novo. We are required to review the whole record as in cases of an equitable nature and decide the cause on the merits, according to the best interests of the children, giving, of course, due deference to the findings of the trial court on disputed questions where matters of credibility of the witnesses are involved, and we are not to set aside the judgment unless it is clearly erroneous. Rule 73.01(d), V.A.M.R. It is our duty to review the record and decide the matter on the merits. But we must be mindful that while the finding of the trial court is not binding on us, the judgment is not to be regarded lightly or to be easily disturbed and should be deferred to unless we are firmly convinced that the welfare of the children requires some other disposition. The party seeking modification, here Mrs. Northrup, has the duty and burden to show changed circumstances and conditions since the date of the original decree in 1967. And the pole star which must guide our determination and the predominant rule which must be followed is that the best interests and welfare of those lovely children must be served. "The welfare of the [children] is the prime consideration in any adjudication of [their] custody, and the rights and claims of the contending parties, even parents, are matters of secondary importance." Stockton v. Guthary, 415 S.W.2d 308, 311 (Mo.App.1967). The interests, convenience and wishes of both parents must be subordinated to the interests of the children of a broken marriage. D. J. H. v. J. D. S., 481 S.W.2d 539 (Mo. App.1972).

■ After a thorough examination of this record including the motion filed by Mrs. Northrup and all of the evidence adduced at the hearing, and in the posture which this case was presented to the trial court, we are convinced that the trial court did not err in denying the motion to modify, as filed.

The trial court had ample evidence to conclude that the best interests of the children would be served by denying that portion of plaintiff's motion to award her permanent custody. The trial court had ample evidence from numerous witnesses to conclude that the best interests of the children would be served by keeping permanent custody with the natural father, and the court's judgment in respect thereto should be deferred to in the absence of showing that it is clearly in conflict with a preponderance of the evidence.

■ But plaintiff, Mrs. Northrup, specifically complains that the trial court committed error in not entering a judgment which would allow the children to visit with her in the state of her residence, Michigan. But we cannot conclude from this record that the trial court was clearly erroneous in also denying this part of the appellant's motion to "permit reasonable rights of visitation with the children and to permit the children to visit with her." From the evidence presented the trial court could have reasonably concluded that the best interests of the children would be served by permitting visitation in the home of Mr. and Mrs. Sieve.[3] Furthermore, the

side Missouri—in Michigan—was in reality an incidental matter at the hearing—not clearly and specifically presented to the trial court.

3. There was some evidence that the children were apprehensive of visiting with the mother outside the father's home, and on the advice of counsel for Mr. Sieve, the visits were

thrust of the present motion was in effect the same as the wording of the original decree entered in January, 1967, which ordered that Mrs. Northrup should have the "right to visit with said children and have said children visit with her at reasonable times." The court therefore was requested to order rights which had already been decreed. That decree remained in effect.[4]

 We do not say that the fact that children would be removed out of the state would be an insuperable obstacle to the visitation rights of a natural mother. While it is ordinarily against the policy of the law to permit the removal of a minor child to another jurisdiction because of the difficulty of enforcing subsequent orders, such policy is never allowed to stand in the way of the best interests of the children and must give way to the higher policy of permitting visitation when it clearly appears that such removal is for the best interests of the children. Numerous decisions recognize that the natural parent may remove the children to another state or even a foreign country if it is made to appear that the welfare of the children will be subserved thereby. Lane v. Lane, 186 S.W.2d 47 (Mo.App.1945); J. v. E., 417 S.W.2d 199 (Mo.App.1967); Good v. Good, 384 S. W.2d 98 (Mo.App.1965); Dupree v. Dupree, 357 S.W.2d 241 (Mo.App.1962); Green v. Perr, 238 S.W.2d 924 (Mo.App. 1951); Conrad v. Conrad, 296 S.W. 196 (Mo.App.1927). The courts encourage the continued interests, love and affection of divorced parents for the children and strive to afford to the children ample opportunity to have close contact with *both* parents as the children mature. Dupree v. Dupree, supra; Annot. 15 A.L.R.2d 432 (1951).

There is, therefore, no absolute prohibition against removing the children of divorced parents to another state so that one parent may have the precious opportunity of visiting with the children in private. We only hold that under the state of this record the judgment of the trial court should not be disturbed, for it is not in conflict with the clear preponderance of the evidence and neither does it manifest an abuse of judicial discretion. Green v. Perr, supra.

Therefore, in this posture of this case as it reaches us, we cannot conclude that the trial court was clearly erroneous in denying the motion filed by the plaintiff, Evalon Northrup.

The judgment is affirmed.

McMILLIAN and GUNN, JJ., concur.

---

limited to the home of the natural father. Furthermore, from documentary and testimonial evidence, plaintiff did not complain for six years that the visitation arrangements were unreasonable.

4. The original decree does not restrict visitation rights to the home of Mr. Sieve, but is broad enough to include visitation rights outside his home and even outside Missouri.