**J. L. W., n/k/a J. L. P., et al.,
Plaintiffs-Respondents,**

**v.**

**D. C. W., Defendant-Appellant.**

**No. 35635.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Feb. 18, 1975.

---

3. MAI 17.02, in paragraph First, uses this language: "Drove on the wrong side of the road," and the 1973 revisions made no change.

Niedner, Moerschel, Nack & Ahlheim, St. Charles, for defendant-appellant.

Klamen, Summers & Compton, Robert F. Summers, Clayton, and Kennard L. Fenton, St. Charles, for plaintiffs-respondents.

GUNN, Judge.

We review the trial court's action on separate motions to modify a divorce decree. The father (appellant) and mother (respondent) filed separate motions for modification of divorce decree directed primarily to the decretal provisions relating to the custody of two children born during the marriage of the mother and father. This case represents only one of a series

of such motions, and for the reasons which we shall relate, we remand the case to the trial court for further consideration.

The mother and father were divorced from each other for the second time in July, 1966. A motion to modify the divorce decree filed by the father and heard on November 11, 1967 resulted in the granting of the custody of the children to their maternal grandparents (also respondents) with certain visitation and temporary custody rights in the father. A second motion to modify the divorce decree filed by the father as to child custody was heard and denied on December 21, 1971. This appeal is from a third motion by the father to modify the divorce decree and is from the decree of the trial court dated August 8, 1973, which granted custody of the children to the mother in Des Moines, Iowa, subject to the supervision of the Des Moines Department of Social Services. The father was denied the right of any visitation or temporary custody of the youngest boy but was granted certain temporary visitation and custody rights as to the oldest boy.

The essence of the father's third motion to modify is that the mother, who was remarried at the time of hearing on the motion, had engaged in immoral conduct with numerous men after her divorce from the father and was, even now, living libidinously; that the children's maternal grandparents, in total disregard of the decree of divorce concerning custody provisions, had allowed the mother to take the children permanently to Iowa to live with her, thereby depriving the father of his visitation and temporary custody rights. The father also asserted that the children's maternal grandparents were hostile toward him and attempted to alienate the children from him; that the children's maternal grandparents were in ill health and were unable to provide the necessary attention, environment and proper living conditions for the children. The father further asserted that he was now happily married to another woman and able to provide a wholesome home for the children. Therefore, the father's plaint was that he be given custody of the children or, in the alternative, have increased visitation and custody rights.

The mother's motion to modify asserted that she had remarried, could provide the children a good home and family environment and that it was in the best interests of the children that she be given general custody of them. She also testified that she was happily married and able to care for the children; that she had cast aside any tendencies for indiscreet conduct. In her testimony, and also the maternal grandparents', it was related that the father had never shown any concern for the youngest child, and that the youngest child had resisted being with the father. The maternal grandparents did not oppose the mother's (their daughter's) motion to modify but did oppose the father's.

The father's evidence on the motion to modify attempted to establish the mother's propensity for licentious and libertine behavior in the presence of her children. An effort to inquire into the mother's illicit relationships with other men prior to the ruling on the last motion to modify (conduct prior to December 21, 1971) was made by the father's counsel. Objection to such interrogation was sustained. The mother did admit that she lived with her present husband for six months prior to their marriage but added that she saw no moral wrong in doing so nor was there any illicit conduct in the presence of the children. Also, in an effort to establish that the mother was immoral and unfit to have custody of the children, the father sought to present evidence through his son, who was nine and a half years old at the time of trial, that the mother cohabited with other men and was guilty of opprobrious behavior in the presence of the children. In chambers, the court conducted the following voir dire examination of the boy:

"BY THE COURT:

Q Will you state your name?

A   M.D.W. (son)

Q   How old are you, M__?

A   Nine and a half.

Q   And where do you live?

A   In Des Moines.

Q   Des Moines, Iowa?   A   Yes.

Q   M__, there is a hearing taking place now in this court. Are you aware of that?

A   Yes.

Q   Do you know what that is about?

A   Yes.

Q   What is your information as to what it is about?

A   Well, Dennis (father) kept wanting me and all that. So then this court got going. They were fighting over me.

Q   Over your custody?   A   Yes.

Q   Is that what you understand?

A   Yes.

Q   Now, M__, you have been called in here for the purpose of asking you certain questions concerning things that have taken place since December 22, 1971. I want you to think about this question that I am going to ask you first and then tell me what your desire is. I am going to give you the right not to testify. In other words, I am going to give you the right to refuse to testify if you do not want to testify. You may testify if you want to testify.

A   I don't want to testify.

Q   You don't want to testify?

A   Yes.

THE COURT: Very well, I am going to recognize witness' request not to testify.

MR. NACK: Do you want him present when we go into my objection?

THE COURT: M__, you may be excused now."

The father's counsel objected to the court's ruling and made an offer of proof that the son would have testified that the mother had behaved in such a manner before him and his brother that she would be deemed unfit to have custody of the children.

Reports of the St. Charles County Division of Welfare and Polk County, Iowa Department of Social Services on home studies of the father, mother and maternal grandparents were introduced and received into evidence by the court without objection from either party. The social worker who had prepared the home study report for the St. Charles County Welfare Department testified with regard to his report. The report indicated that if an Iowa home study on the mother were favorable, the children should be placed in the custody of the mother with supervision maintained by the Iowa Division of Welfare. The report further reflected that in the event the Iowa study on the mother were not favorable to her that the recommendation would be that the custody of the children remain with the maternal grandparents. During examination on the report, the St. Charles County social worker testified that his reasons for recommending that the placement of the children be with the mother or maternal grandparents in preference to the father was his concern over the father's conduct in completely ignoring the youngest son.[1] However, the

1. The father had made no particular effort to visit or obtain custody of the youngest boy until the third motion to modify. The reason asserted for the lack of interest was that the mother had indicated to the father that the father was not, in fact, the natural father of the youngest boy. While admitting he had done nothing to associate with the youngest boy prior to January, 1972 and had previously not sought custody, the father professed that his attitude had changed and he now wanted both boys.

social worker indicated that his recommendation as to the preferential custody placement "might change" if the St. Charles Welfare Department were given supervision and control over the children under court order.[2] The social worker had received a report of the Polk County, Iowa Department of Social Services shortly before testifying. His characterization of the Iowa report was that it was unfavorable to the mother, in that the report was incomplete. Further, since the Iowa report had been received by him only a short time before the hearing, he had been unable to assimilate its contents into his own report; that further study, in his opinion, would be necessary for a complete evaluation as to the mother's fitness.

The father appealed, and we consider the following alleged points of error: 1) that the trial court should have refused to give any consideration to the St. Charles County, Missouri and Polk County, Iowa Departments of Welfare reports, as they contained irrelevant and incompetent material; 2) the trial court erroneously refused to allow background information concerning the mother's conduct since the divorce and up to the December 21, 1971 decree; 3) that the trial court's judgment was against the law and weight of evidence by reason of the mother's immoral conduct, the deprivation of the father's visitation rights and improper removal of the children to Iowa from the trial court's territorial jurisdiction against the children's welfare; 4) that the trial court did not conduct a proper voir dire examination of the nine and a half year old son to determine his competency to testify.

The father's brief contains other points relied on for which he seeks reversal of the trial court's decision. However, there are no authorities cited in their support, and such points are deemed abandoned and will not be considered. Earney v. Clay,

516 S.W.2d 59 (Mo.App.1974); Cady v. Kansas City Southern Ry. Co., 512 S.W.2d 882 (Mo.App.1974).

■ The first point we consider concerns the St. Charles County, Missouri and Polk County, Iowa home study reports which the father contends should not be considered, as they contain irrelevant materials. There was no objection made to the receipt of the reports into evidence. In fact, they were received in evidence pursuant to stipulation by counsel. Since the reports were received generally without limitation and without objection, the entire contents may be considered by the court. Any objection as to their receipt and use was waived. Denton Const. Co. v. Missouri State Highway Commission, 454 S.W.2d 44 (Mo.1970); Mound Rose Cornice & Sheet Metal Works, Inc. v. H. Kalicak Const. Co., 454 S.W.2d 603 (Mo.App.1970).

■ We find no error with regard to the trial court's refusal to consider evidence concerning the mother's conduct prior to the December 21, 1971 custody decree. In McFadden v. McFadden, 509 S.W.2d 795 (Mo.App.1974) the same issue was considered by the court and ruled on as follows l.c. 798:

"On the hearing of a motion to modify, the court may consider changed facts and circumstances after the prior decree and material facts existing at the time of the decree but unknown to or concealed from the court. In re Wakefield, 365 Mo. 415, 283 S.W.2d 467, 473 [14] (banc 1955); Endicott v. Endicott, 435 S.W.2d 388, 390 [2] (Mo.App.1968). The reason for not going into matters which occurred prior to a previous decree is they have been merged into that decree and thereafter may not be inquired into under the doctrine of res judicata, which favors the repose of litigated issues. But this rule applies only as to matters

2. At a point later in his testimony, the social worker said that supervision by his department over the children would remove his con-

cern about the father's being given custody of the children.

which occurred prior to the last decree concerning a child's custody."[3]

There was absolutely no showing in this case that any conduct of the mother prior to the December 21, 1971 ruling was concealed or unknown to the father which would permit its being considered in this proceeding.[4]

■ The thrust of the father's third alleged point of error is that the trial court abused its discretion in granting the mother custody in view of the overwhelming weight of the evidence. In our determination of this case, we are bound by the fundamental tenet that in matters relating to child custody, the children's welfare dominates all other considerations. Northrup v. Sieve, 517 S.W.2d 470 (Mo.App. 1974); In the Matter of C.S.C., 514 S.W. 2d 97 (Mo.App.1974); C. C. v. J. A. C., 499 S.W.2d 809 (Mo.App.1973). The father asserts that the mother's admitted illicit relationship with her present husband prior to marriage and the deprivation of the father's visitation rights are circumstances which warrant his being granted custody of the children. It is true that each of these elements is a circumstance to be considered in a child custody case and may justify a ruling which prevents the offender from either obtaining or retaining a child's custody. Feltman v. Feltman, 514 S.W.2d 353 (Mo.App.1974); Benjamin v. Benjamin, 370 S.W.2d 639 (Mo.App.1963). But these are merely factors which the trial court may contemplate in reaching its decision as to what is best for the child, and although the mother may have engaged in adulterous conduct with her present husband prior to marriage, that fact alone does not require the trial court to refuse custody of the children to the

mother. D. M. T. v. D. V. T., 483 S.W.2d 84 (Mo.App.1972); Klaus v. Klaus, 509 S. W.2d 479 (Mo.App.1974). The trial court measures moral lapses of a parent and their effect on the welfare of the child, and such lapses, even to the extent that the mother may be living with another man, do not necessarily make a parent unfit. E. D. v. T. D., 483 S.W.2d 87 (Mo.App.1972); J. F. R. v. R. R., 482 S.W.2d 543 (Mo.App. 1972). And while deprivation by one parent of the other parent's decretal or visitation rights may constitute a changed condition justifying modification, Lipsey v. Lipsey, 464 S.W.2d 529 (Mo.App.1971), neither does that factor bind the court to a change of custodial rights.

■ We turn to our obligation in the consideration of this case, which is:

". . . [W]hen the custody of a child has been fixed in a divorce decree, as in here, there can be no change made respecting this custody except upon a showing of changed conditions since the entry of the decree, or upon material and relevant facts existing at the time of the decree but unknown to or concealed from the court, and then only for the welfare of the child." McFadden v. McFadden, supra, 509 S.W.2d at 799.

The change of conditions must be viewed in the light of the child's best interests. Bolten v. Bolten, 507 S.W.2d 46 (Mo.App. 1974). In C. C. v. J. A. C., 499 S.W.2d 809 (Mo.App.1973) it was said, l.c. 811:

"Our scope of review in this type of action is to review both the law and the evidence and to make our own findings and conclusions. Initially, the determination of all factual issues rests in the trial court and due deference to its find-

---

3. We also note, as in McFadden v. McFadden, supra, that § 452.140, RSMo Supp.1973, V.A. M.S., provides: "The court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modi-

fication is necessary to serve the best interests of the child." (effective Jan. 1, 1974)

4. But see G.C.J. v. G.G., 510 S.W.2d 193 (Mo.App.1974), holding that evidence of past conditions is not foreclosed for clarification and casting light upon existing conditions. But that is not apt here.

ings will be accorded unless they are clearly in conflict with the preponderance of the evidence or disclose an abuse of discretion. This is particularly true upon issues of credibility of witnesses. (citations omitted) This deference to the trial court as to credibility of witnesses applies with special emphasis where as in the case before us there is direct and irreconcilable conflict in the evidence on nearly every point in issue. (citation omitted.)"

We thus observe that there is no exact measuring device for making a determination in a child custody case other than the constant axiom to do what is best for the child. Each case must be determined on its own merits with deference given to the trial court's findings, which will be upheld unless an abuse of discretion is apparent. Suddarth v. Suddarth, 515 S.W.2d 817 (Mo.App.1974); Ackfeld v. Ackfeld, 483 S.W.2d 614 (Mo.App.1972); Northrup v. Sieve, supra.

■ We are reluctant to hold that the trial court has abused its discretion in awarding custody of the children to the mother. But we observe that the record is murky due to the rather inconclusive, inconsistent and vacillating testimony of the St. Charles County Welfare Department social worker founded on incompetent and admittedly deficient reports. We must, therefore, remand this case to the trial court for further consideration, particularly, as complete studies by Departments of Welfare will now be available to assist the trial court in its ruling.

■ We also note that the record is cloudy as to the basis for the trial court's ruling on excusing the nine and one half year old boy from testifying. If the reason for refusing to permit the boy to testify is that he was incompetent, the limited voir dire examination conducted will not

support such a ruling and the case is also remanded for further examination as to competency.[5] Under § 491.060 RSMo 1969, V.A.M.S., there is a rebuttable presumption that a child under ten years of age is incompetent to testify with the determination of competency within the trial court's discretion. The test of competency, as outlined in State v. Young, 477 S.W.2d 114 (Mo.1972) is, l.c. 116:

"(1) present understanding of or intelligence to understand, on instruction, an obligation to speak the truth; (2) mental capacity at the time of the occurrence in question truly to observe and to register such occurrence; (3) memory sufficient to retain an independent recollection of the observations made; and (4) capacity truly to translate into words the memory of such observation."

There is an obligation on the part of the trial court to conduct a proper voir dire examination of the child, out of the presence of the jury (if there be one), and under such conditions as are determined by the judge to be best for the child. Pollard v. Decker, 354 S.W.2d 308 (Mo.App.1962). The record here will not support a finding that a sufficient voir dire was conducted, as it appears that the trial court's refusal to allow the child to testify was based solely on the child's statement that he did not want to testify. See Benjamin v. Benjamin, supra. According to the offer of proof made by the father's counsel, the son would have testified concerning the mother's immoral behavior in the children's presence and on other matters pertaining to the mother's fitness, all of which would be relevant for the trial court's consideration on a motion to modify, assuming they occurred subsequent to the court's ruling on the last motion to modify. And children, if competent, may be called upon to testify in this regard. McCoin v. McCoin, 218 S.W. 949 (Mo.App.1920).

---

5. We observe that the boy would now be over ten years of age, and there is a rebuttable presumption that he would be competent to testify. State v. Obie, 501 S.W.2d 513 (Mo. App.1973).

However, if the trial court refused to permit the boy to testify out of concern for the child's well being, the trial court in its discretion may exempt him from testifying. We acknowledge that a parent has a right to call upon his children, if competent, to testify in a child custody proceeding where such evidence is relevant. However, we have an aversion to requiring a child of tender years to testify in a child custody proceeding as to the immoral behavioral attributes of his parents.[6] Thus, if the trial court has before it some basis to believe that requiring the child to testify would be detrimental to the best interests of the child, it may exercise its discretion in refusing to require the child to testify. We have not been made aware from the record before us whether the child was excused from testifying for the reason that it was in the child's best interests.

We thus remand the case to the trial court for its examination into the son's competency to testify—if that forms the basis for the trial court's excusing him from testifying—recognizing that such testimony may have a bearing upon the trial court's subsequent ruling on the motion to modify.

Further, since additional information may be available to assist in the determination of this difficult case,[7] on remand, the trial court shall also hear and receive such other relevant and competent evidence as may be introduced by the parties touching on all issues before the court.

The judgment is reversed and remanded for further hearing and consideration by the trial court in accordance with the provisions of this opinion.

SIMEONE, P. J., concurs.

McMILLIAN, J., concurs in results only.

---

6. See 24 Am.Jur.Divorce and Separation § 413 (1966) and Annot., 2 A.L.R.2d 1329 (1948).

7. For example, the St. Charles County, Missouri and Polk County, Iowa Departments of Welfare will have had opportunity to make more fully complete and thorough investigation and studies of the parties for reports for the trial court's consideration.