**L. W., Plaintiff-Appellant,**

v.

**G. W., Defendant-Respondent.**

**No. 37026.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

March 9, 1976.

Napier, Napier & Wright, George E. Wright, Fort Madison, Iowa, for plaintiff-appellant.

Coburn, Croft, Shepherd & Herzog, John R. Musgrave, St. Louis, for defendant-respondent.

GUNN, Judge.

On a petition for modification of child custody the trial court ordered the transfer of custody of a three year old boy from his mother to his father. The mother appeals the award. We find that there was ample basis for the transfer of the child's custody from the mother to the father and affirm the trial court's ruling.

There was sufficient evidence to support the finding of the trial court as to the father's fitness for custody of his child, and the mother does not challenge the father's fitness.[1] Our decision in this case to affirm the award of custody of the child to the father rests on the issue of the mother's fitness.

The mother (appellant) and father (respondent) were divorced in 1972, and the mother was awarded custody of their infant son born of the marriage. In December of 1973, the mother and son began living with a male companion.[2] The circumstances occurring while the mother and son lived with the male companion formed the basis of the

---

1. The father owns his own home, has a responsible job and is able to provide a stable environment for his son.

2. The mother described the male companion as her common law husband.

transfer of the custody of the son from the mother to the father. Shortly after the male companion and mother met in December, 1973, he moved in to live with the mother and son in the mother's Kahoka, Missouri apartment. Apparently, the male companion and the mother were hosts for frequent parties, and in January, 1974, their landlord requested them to vacate the apartment because of the noise emanating from the parties. The mother, son and male companion then moved to live with the male companion's parents, his two brothers and sister. They lived with the male companion's family for about two weeks before moving to another apartment where they lived for about a week before being requested to leave, again because of the noise they made. The three (mother, son and male companion) made the trek back to the male companion's parents for another three to four week stay before moving to another apartment to live together, this time for a period of approximately four to six months. Another move was made by the peripatetic threesome, this time to an apartment in Keokuk, Iowa. Thus, within a period of approximately eight months, the son was required to move six times, during which the mother continued to live with a man to whom she was not married, and at least part of the time the son shared the same bedroom with the male companion and the mother. But there is more.

In the early morning of September 27, 1974, the Keokuk apartment was raided by police pursuant to a search warrant obtained after law enforcement agents had made purchases of large quantities of narcotics from individuals operating out of the mother's apartment. The mother and her son, the male companion and several other persons were present in the apartment when the incursion occurred. A large number of stolen weapons, including hand guns, rifles and a .45 caliber semi-automatic weapon,

resembling "the old-style Thompson submachine gun" were confiscated. An unspecified quantity of marijuana and a stolen television set were also found in the apartment. The mother and male companion were arrested, and the male companion subsequently pleaded guilty to two felony counts for violation of the Federal Gun Control Act, to one felony charge for delivery of a controlled substance and to one misdemeanor for delivery of a nonscheduled drug. The mother was charged with conspiracy to commit a felony and with possession of a controlled substance. At the time of the custody modification hearing, the charges pending against the mother had not been resolved. At the hearing, the mother acknowledged her personal use of marijuana since she commenced living with the male companion.

After the raid, the father sought transfer of custody rights of the son to him with the basic substance of his modification petition alleging the mother's unfitness. Although there were some allegations made by the father which were found by the trial court to be apocryphal, we believe the foregoing evidence properly supports the trial court's order transferring custody of the child to the father. In reaching our decision, we are fully cognizant of and apply the basic postulations relating to child custody transfer proceedings which we hereinafter relate.

We first find that although the divorce between the mother and father was in 1972, this modification proceeding is governed by the Dissolution of Marriage Act, §§ 452.-300–452.415 RSMo.Supp.1974.[3] Section 452.410, regarding modification of custody decrees, provides:

> "The court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that

---

3. Section 452.415(3) provides that the dissolution statute shall apply to "all proceedings commenced after January 1, 1974 for the

modification of a judgment or order entered prior to January 1, 1974."

a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child."

Second, the child's interests and welfare predominate over all other considerations in a child custody matter. *E. C. S. v. J. D. L.*, 529 S.W.2d 423 (Mo.App.1975); *Noland v. Noland*, 527 S.W.2d 696 (Mo.App. 1975). We also recognize that the moving party—in this case, the father—has the burden of showing a change of conditions necessitating the transfer of custody. *Northrup v. Sieve*, 517 S.W.2d 470 (Mo.App. 1974). Further, even though there is a presumption that a mother is better fit to have custody of a child of tender years, that presumption is not conclusive. *Johnson v. Johnson*, 526 S.W.2d 33 (Mo.App.1975). And, certainly, moral fitness of the parents is a matter of prime concern for the court in determining who should have custody of a child. *V. M. v. L. M.*, 526 S.W.2d 947 (Mo.App.1975).

The mother asserts that there was no evidence in the record taken as a whole to support the transfer of her three year old son to the father. We disagree. The record is overwhelming with evidence of the mother's opprobrious conduct. She has lived in open and notorious adultery with a man, sharing the same bedroom with him and her son. She has skipped from place to place—at least six moves in less than a year.[4] She has admitted her use of a controlled substance. And we are critically concerned with her association with the male companion. An apparent drug trafficking and illicit stolen weapon operation has been conducted within the same dwelling where the infant son lived—scarcely a salubrious atmosphere for the boy. We cannot condone the conduct of the mother. We also note that rather than condemning the male companion for his activities, shortly after the raid the mother married him

and continues to live with him.[5] The arrests of both the male companion and the mother and the conduct of both in creating an environment for the child is a proper subject of inquiry as to the mother's fitness and affords ample basis for the trial court's modification order. *Feltman v. Feltman*, 514 S.W.2d 353 (Mo.App.1974). In *Feltman v. Feltman*, supra, a mother was deemed unfit in a child custody transfer case where it was found that after her divorce from the child's father, she had married a man who kept marijuana and pictures of nudes in the apartment where the mother and child lived. Much more unsuitable is the mother here with the conditions in which she has permitted her infant son to live.

The environment offered by the mother to the child is completely unwholesome and unsuitable, and the trial court had no choice but to transfer custody. We find the conduct of the mother with her adult companion deleterious to the child's best welfare. The vicissitudes of life cause sufficient burdens without the miasmatic conditions which the mother has foisted upon her child.

On appeal, the mother attempts to smoke screen the issue of her conduct by asserting that the trial judge based his decision for transfer on the fact that the male companion is black and the mother is white. The suggestion is untenable. The trial judge clearly based his decision upon the environment thrust upon the infant by the mother and the male companion—not on a racial basis.

Our duty is to review this case de novo, giving due deference to the trial court's findings. Giving effect to this admonition, we have no doubt that the child's best interest will be served by the transfer of custody. There is ample justification to defer to and sustain the trial court's finding. There is no reason to disturb the award. *Brand v. Brand*, 534 S.W.2d 628 (Mo.App.1976).

4. She has apparently moved at least one more time since the raid on her apartment.

5. The raid was September 27, 1974; the mother married the male companion October 12, 1974.

The judgment is affirmed.

SIMEONE, P. J., and KELLY, J., concur.