### In re The MARRIAGE OF G.B.S. and A.L.S.

**G.B.S., Appellant,**

v.

**A.L.S., Respondent.**

**No. 44777.**

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 31, 1982.

Motion for Rehearing and/or Transfer Denied Oct. 15, 1982.

Application to Transfer Denied Dec. 13, 1982.

David V. Collignon, Clayton, for appellant.

Charles W. Neidner, St. Charles, for respondent.

CRIST, Judge.

Dissolution of twelve year marriage. Wife appeals the award of primary custody of son to father and periodic maintenance award to her of $800.00 per month for one year and $400.00 per month thereafter for life. We affirm.

Husband admitted two adulterous relationships prior to separating from wife, the

last affair precipitating the separation. At the time of the dissolution, father, his six year old son, father's paramour, and her son resided together in paramour's trailer. Excepting for the open adulterous situation, substantial evidence indicated the best interests of the child would be served by father being the primary custodian. Testimony revealed the child preferred living with the father and a close relationship had long existed between them. Further, the child seemed well adjusted socially and emotionally, and was doing exceptionally well in school while living with his father.

■ Father's grant of primary custody was conditioned upon his not living with a female to whom he was not married. Father agreed at trial to abide by his condition.

■ We do not condone father's past conduct, nor did the trial court. The conditional order of custody and father's agreement assured an end to the adulterous relationship. The existence of a prior adulterous relationship alone does not make father an unfit custodial parent. *M.B. v. J.W.B.,* 628 S.W.2d 358 (Mo.App.1981).

■ Wife next complains about reduced maintenance after one year. The trial court found wife capable of employment but in need of further training or education. Wife possessed a degree in education from her native West Germany. The degree, however, was not transferrable to the United States. While not employed during the marriage, wife had work experience as a governess, dental technician, and receptionist. She was also an accomplished seamstress. The increased first year maintenance award was made specifically for wife's benefit in gaining the training or experience necessary to obtain employment suitable to her capabilities. The maintenance award by the trial court did not purport to reduce the amount of maintenance required by wife; rather, it sought to aid wife's fulfillment of her affirmative obligation to seek employment by providing increased means during the first year following dissolution for training and educa-

tion. *See Brueggemann v. Brueggemann,* 551 S.W.2d 853, 858 (Mo.App.1977). We find no abuse of the trial court's discretion in awarding wife an extra sum of maintenance during the first year so that she may improve her skills to become gainfully employed. The award will not be disturbed. *Pederson v. Pederson,* 599 S.W.2d 51 (Mo. App.1980).

Judgment affirmed.

REINHARD, P.J., concurs.

SNYDER, dissents in part in a separate opinion.

SNYDER, Judge, dissenting.

I respectfully dissent from the majority opinion in its affirmance of the child custody award.

The decree of the trial court reads, in part:

"The Court further finds that it would be in the best interests of the parties' minor child that primary custody of the minor child be in respondent, *provided that respondent desists from residing in the same household with any member of the opposite sex to whom respondent is not married; that in respondent's testimony at the trial of this cause respondent assured the court that he would desist from residing in the same household with a member of the opposite sex to whom he is not married if granted primary custody of the parties' minor child;* and that based upon such assurance by respondent the Court finds that it would be a substantial change of circumstances subsequent to the entry of this Decree if respondent does not desist from residing in the same household with a member of the opposite sex to whom respondent is not married."

(Emphasis added).

An appellate court will uphold the child custody order of a trial court unless there has been an abuse of discretion or unless the court is convinced that the child's welfare requires some other disposition than

that made by the trial court. *In re Marriage of L____, M____,* 541 S.W.2d 760, 761[1–3] (Mo.App.1976). I believe the trial court abused its discretion here.

I am fully aware of the trial judge's superior position in his opportunity to view the witnesses, their candor or lack of candor, their demeanor and personality and their response to interrogation. But the father's conduct was such that the best interest of the child dictated that custody should have been awarded to the mother, who the record revealed was a suitable custodian.

Obviously the trial court found the living arrangement of the father, his paramour, and his son not in the best interest of the child when the court granted custody to the father only on the condition that the living arrangement be changed. The trial court also recognized the danger to the son inherent in the living arrangement by directing that it would be a substantial change of circumstances if respondent lived with a woman not his wife after the entry of the decree.

Private personal conduct by a parent which could well have an effect on children during the years in which their character, morality, virtues and values are being formed cannot be ignored or sanctioned by courts. Private conduct of a parent in the presence of a child or even under some other circumstances may well influence his or her young life. *L.H.Y. v. J.M.Y.,* 535 S.W.2d 304, 308[9] (Mo.App.1976).

It is true that the existence of a *prior* adulterous relationship alone does not make a parent an unfit custodian. *M.V. v. J.W.B.,* 628 S.W.2d 358 (Mo.App.1981); *J.L.W. v. D.C.W.,* 519 S.W.2d 724, 729[3–5] (Mo.App.1975). But here, the relationship and living arrangement existed at the time of the dissolution hearing. The evidence showed that the child had been continually exposed to the relationship and had accepted it "after long discussions." There was also evidence that the child had slept in the same bed as the father and his paramour.

The issue here is not condemnation or approval of the father's moral conduct. It is whether such conduct is a detriment to the child's welfare. See *Fastnacht v. Fastnacht,* 616 S.W.2d 98, 100[1–3] (Mo.App. 1981).

There is evidence that the child accepted the relationship "after long discussions." This suggests that the child was troubled by the relationship, and respondent took it upon himself to convince an impressionable child that his cohabitation with a member of the opposite sex was acceptable. These discussions alone and the child's own observations, may have a detrimental effect on his character and moral development.

Perhaps even more troubling is the father's lack of initiative in ending the cohabitation arrangement once he obtained primary custody of his son. It was only after the court's intervention that the father agreed to end the living arrangement.

Although the trial court is given broad discretion in determining custody matters, that discretion was abused in two respects. First, under § 452.375 RSMo. 1978 and considering all the evidence about both parties at the dissolution hearing, the mother was the more suitable primary custodian. Second, the trial court should not have the authority to ignore the weight of the evidence and intervene to manipulate a person's lifestyle, making an otherwise unsuitable custodian suitable, when another suitable custodian is available.

This court is not required to wait for manifestation of harmful consequences before it acts. *L.H.Y. v. J.M.Y., supra* [10]. At the time of the dissolution hearing, the respondent was openly cohabitating with a member of the opposite sex. When a child is exposed to such a relationship, as here, the courts have generally found such conduct objectionable and potentially harmful to the child. e.g., *N.J.W. v. W.E.W.,* 584 S.W.2d 148, 150 (Mo.App.1979); *In re Marriage of R.R.,* 575 S.W.2d 766, 768[4] (Mo. App.1978). The trial court here abused its discretion.

I respectfully dissent from that part of the majority opinion which granted custody of the son to the father.