Esther L. BUTLER, (Plaintiff) Respondent,

v.

Henry J. BUTLER, (Defendant) Appellant.

No. 31386.

St. Louis Court of Appeals.

Missouri.

May 19, 1964.

J. C. Jaeckel, Moser, Marsalek, Carpenter Cleary & Jaeckel, St. Louis, for appellant.

C. Powell Fordyce, Thomas Rowe Schwarz, Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, for respondent.

ANDERSON, Judge.

This is an appeal from an order and judgment, entered in a divorce proceeding, awarding Esther L. Butler, plaintiff in said action, the sum of $250.00 per month alimony pendente lite. The appellant is Henry J. Butler, defendant below.

Plaintiff filed the suit on October 17, 1961. The petition alleged general indignities and the separation of the parties on September 10, 1961. There was a prayer for a divorce with alimony in gross and an attorney's fee. Defendant's answer denied the charges made against him and averred that plaintiff was not entitled to any of the relief sought.

On November 18, 1961, plaintiff filed a verified motion for alimony pendente lite, suit money and an attorney's fee. The motion was thereafter on December 13 heard and submitted at a pretrial conference, and on said date the court sustained said motion as to the allowance of an attorney's fee, awarding plaintiff the sum of $500.00 for said item on account, but denied alimony pendente lite. Appellant in his brief in this court states the court refused alimony pendente lite for the reason that plaintiff possessed at that time assets in the sum of $5,000. This statement is not denied by respondent, and since the record shows that plaintiff in her motion to set aside the order made a like statement, we will accept appellant's statement as true. Plaintiff did not file a motion for new trial within the time required by law, and did not appeal from the order and judgment.

But on May 29, 1962, plaintiff filed a verified motion entitled "Motion to Set Aside Order Denying Plaintiff Alimony Pendente Lite or in the Alternative to Modify Said Order." The motion recited a change in plaintiff's financial condition since Decem-

ber 13, 1961, in that her living expenses had reduced her assets to much less than $5,000, and her funds were very rapidly exhausted; that she was 59 years of age, and although she had obtained part time employment at $30.00 per week, she was in need of dental and medical services but feared to expend her limited funds for such services. It was also averred that defendant was possessed of gross assets in excess of $250,000 and net assets in excess of $135,000; that defendant had an income from securities, from his business and rents, and in addition a life income from a trust with assets of approximately $150,000. The prayer of the motion was to set aside the previous order denying plaintiff alimony pendente lite or in the alternative to modify said order and make and enter an order for alimony pendente lite in such an amount as the court should deem reasonable and proper to permit plaintiff to maintain herself in a manner suited to her condition in life and to which she was accustomed during the time plaintiff and defendant lived together.

Hearings were had on the motion on June 19 and 22, 1962. At the outset defendant's counsel objected to the reception of any evidence in support of the motion on the ground that no motion for new trial having been filed after the entry of the order of December 13, 1961, denying plaintiff's motion for alimony pendente lite, or an appeal taken from said order, the matter was res adjudicata, and the court was without jurisdiction to set aside or modify said order of December 13, 1961. The objection was overruled, the court stating it had jurisdiction to entertain such a motion bottomed on changes in circumstances since the previous order.

In support of the motion plaintiff testified she was then 59 years of age. The parties were married in Scarsdale, New York, in February 1953, and separated September 10, 1961. She stated that the last time she received any money from defendant was in November 1961, and that since said date defendant had contributed nothing toward her support. Plaintiff owns but one share of stock in Butler-Kohaus, Inc., her husband's business. On December 13, 1961, she had assets worth approximately $5,200, but at the time of the hearing (June 19, 1962) her assets, which consisted of stocks, were worth less than $2,000. She had sold over one-half of the stock in order to support herself, not having other resources. She had also borrowed $300 from her brother. She entered the employ of Lammert Furniture Company on March 1, 1962, working three days a week and was being paid $30 per week net exclusive of commissions. She had been unable to earn any commission, because she could not make the requisite number of sales, working only three days a week. She had been in bed ill the previous week on account of a recurrence of a sacroiliac condition that had its inception four years previously. She had consulted a doctor for this condition, and he had made seven or eight X-rays of her spine. She thought the doctor's bill would be around $100. She stated she was in need of dental work which should have been done before she and defendant separated. Part of this dental work was urgent, but she had no money to pay for it. Since December 1, 1961, plaintiff has been living in a five-room apartment, at 818 South Brentwood Boulevard, in the City of Clayton, Missouri, the rental for which is $150 per month. She estimated she needed between $400 and $500 per month to properly sustain herself.

Plaintiff and her husband, as tenants by the entirety, own a residence at 4907 Pershing Avenue, in the City of St. Louis, for which a prospective purchaser had offered $30,000. Defendant is living alone in this residence, which has twelve rooms and three baths.

The Joint Federal Income Tax Return of the parties for the years 1959 and 1960 were introduced in evidence by plaintiff. The 1959 return shows a salary for Mr. Butler of $4,800 and for Mrs. Butler of $4,902.50; capital gains from the sale of

stocks, $24,772.04; net rental from a building on Olive Street, $2,075.09; income from a trust fund, $5,457.36; dividends received by Mr. Butler from stocks, $8,161.40; and dividends received by Mrs. Butler, $84.00. The total of these items is $50,252.39. However, in the return the parties have taken credit in the sum of $873.01 as depreciation of the Olive Street Building which sum, of course. was not an actual out-of-pocket expense in connection with said property. Adding this item to the above sum makes a gross cash receipt for the parties of $51,125.30 for the year 1959.

■ Defendant is the sole owner of Butler-Kohaus, Inc., except for qualifying shares owned by others. Such being true, it would have aided the court in estimating defendant's income to know the earnings of this corporation, for the reason that under the circumstances it would be proper to lift the corporate veil and consider its earnings in ascertaining defendant's income. However, no such evidence was offered. But it does appear that at present the corporation is making no payment of salary to Mrs. Butler.

The capital gain of $24,772.04 was paid to Security Trust Company to reduce a loan there to $105,100. This, of course has had the effect of reducing interest payments for subsequent years. The Federal Tax Return for 1959 shows a Federal tax of $8,340.37; interest paid, $5,748.95; taxes other than Federal income tax, $1,762.31. This item included plaintiff's Social Security Tax, an item defendant does not pay at the present time, since plaintiff is no longer employed by defendant's company. Said return further shows contributions to various charities of $435, a deduction of $8.25 for a safety deposit box, and $138.29 for storm damage to his summer home.

Defendant also introduced in evidence as Exhibit 1 a list of items of living expenses for the year 1959, amounting to $13,810.50. Many of these items included expense incurred on behalf of Mrs. Butler and other items not likely to recur. For instance, there is listed items of expense in connection with the wedding of Mrs. Butler's daughter, amounting to $395.76; long distance telephone charges made by Mrs. Butler amounting to $529.00; taxicab fare for Mrs. Butler, $83.30; department store account of Mrs. Butler, $1,120.98; $746.29 for vacation trip which included Mrs. Butler and her children by a former marriage; additional Federal tax of $760.72 paid in connection with a trip the parties made to Europe in 1951; medical expense incurred by Mrs. Butler, the exact amount not shown; veterinarian expense in connection with dogs, $82.25; $31.26 which Mrs. Butler expended for framing pictures; appraisal of the contents of house at 4907 Pershing Avenue, mostly Mrs. Butler's property, $200; $75 spent in connection with the funeral of Jim Burns, a fishing guide and life-long friend; and gifts to Mrs. Butler's children, exact amount not shown. Also included was $1,680 payment on the house where the parties lived and $1,757.85 life insurance.

The Joint Federal Income Tax Return for 1960 shows salary for Mr. Butler in the sum of $4,800, and Mrs. Butler in the amount of $3,792.50; dividends received in the sum of $6,856.95; income from trust estate, $5,438.97; net rent from Olive Street property, $1,893.12. Here again, the sum of $872.01 depreciation is taken on the Olive Street property, and since this is not an out-of-pocket expense, said sum should be added to the net rent received. There was also shown a capital loss through the sale of stocks purchased in 1960 which should be deducted. With these alterations it appears that the income of the parties for the year 1960 amounted to $24,451.03. It is not shown where defendant got the $10,137.26 to purchase stock during 1960, the sale of which during said year resulted in a capital loss of $1,508.45. There is deducted from income a business loss sustained by Butler-Kohaus, Inc., the sum of $9,567.81, thus reducing his Federal Income Tax to $502.09. Other deductions are: contribu-

tions, $315.00; interest, $5,803.07; taxes, $1,640.61; and miscellaneous, $58.25.

Also introduced in evidence was defendant's Exhibit No. 2, an itemized list of household expenses. This included $1,680.00 paid to reduce the debt on the house; life insurance premiums in the sum of $1,757.85; medical expense of $468.41; veterinarian expense in connection with the dogs, $116.00; summer trip to Wisconsin, $554.02; taxicab fare for Mrs. Butler, $58.05; department store account, $1,044.08; Christmas presents, $425.80; household repairs, $1,288.05; telephone, $570.09; liquor, $323.87; insurance, $730.09; $191.90 upholstering Mrs. Butler's couch; and $103.25 in an attempt to sell the Pershing Avenue house. It is fair to assume that a fair share of the above expense was spent on Mrs. Butler, which expense defendant is not now burdened with.

In 1960 defendant borrowed $3,000.00.

Defendant also offered in evidence defendant's Exhibit No. 3 which was identified as an itemized list of defendant's expenses during the year 1961. Defendant testified this list did not include interest and taxes paid. The total shown on this exhibit is $12,032.46. It included a number of unusual items such as veterinarian fees for dogs, $171.50; attorney's fee to E. O. Hancock, $500; attorney's fee to Moser, Marsalek, etc., $202.92; and medical expense for first half of year, $492.14. It does not appear for whom this item was expended. There is listed $689.17 for summer trip to Wisconsin and a department store account, $845. It does not appear if this sum was for Mrs. Butler. There appears an item for presents for children, $550. It does not appear how much of this item was expended for presents for Mrs. Butler's children. Listed is the sum of $342.97 for liquor. The list contained also the item of $1,680 for house payment; life insurance premiums of $1,757.85; and insurance in the sum of $948.86 paid to Capen & Company. It does not appear what this last item covered. There is also a notation on Exhibit 3 that

$2,900.00 was borrowed in 1961. Defendant testified that in 1961, he purchased a fur coat for Mrs. Butler which cost $1,350, and a gold wrist band for $116. He also testified that on the exhibits, under what category he did not recall, he had included his dues at the University Club amounting to $30 per month and dues at the St. Louis Country Club which amounted to $60 per month. Defendant employs a maid at $35.00 per week. He admitted that he did not believe $150 per month would support Mrs. Butler in the manner of living to which she was accustomed during the time they were living together. He further testified he had no idea what it would cost to support Mrs. Butler on that same general standard, but thought it could be done for far less than $400 or $500 a month. Plaintiff owns two buildings in the 2800 block of Olive Street where Butler-Kohaus transacts its business. There is a deed of trust on this building. There was no evidence of the value of this building, but in answer to interrogatories filed in the case and attached to the exhibits on file in this court there is a statement that the value of their property is unknown, but that it is appraised for tax purposes at $25,000.00. It also stated that the deeds of trust on this property amount to $23,500. Defendant testified he owned stocks which he pledged at Security Trust Company for a debt of $105,100, and that the market value of these stocks at the time of trial was $121,213, leaving a value over the loan of slightly over $16,000. Defendant owns a home in Eagle River, Wisconsin, that could be rented for four or five hundred dollars a month. Defendant had not rented it for several years prior to the trial but hoped to rent it that year. Defendant inherited only a one-fourth interest in this property, but had purchased the interests of the three other owners for $5,000 a piece. He still owes $2,000 on it. It is not shown what the cash surrender value is of the life insurance he has taken out on his life for the benefit of a trust for his daughters, and for which he pays annual premiums of $1,757.85. These policies are pledged to secure a loan of $17,000 at the National Stock Yards

Bank, National City, Illinois. It also appears from the testimony that defendant was operating a new Chevrolet station wagon, the title of which was in Butler-Kohaus, Inc. Defendant owns 3,998 shares of stock in Butler-Kohaus, Inc., which has a book value of about $6.00 a share.

■ Appellant's first point is that the court erred in awarding plaintiff the sum of $250.00 per month as and for alimony pendente lite. In support of this contention it is urged (1) that since plaintiff did not file a motion for new trial after the judgment and order of December 13, 1961, which denied her motion for alimony pendente lite, nor appeal from said judgment and order, said judgment must be held to be res judicata of the issue of alimony pendente lite and, (2) Section 452.070 R.S. 1959, V.A.M.S., does not provide for the "modification" of an order pertaining to alimony pendente lite; that the denial of an allowance under the original motion exhausted the power of the court to give further consideration to the question of temporary alimony.

The judgment of the court of December 13, 1961, has now, by virtue of Civil Rule 75.01, V.A.M.R., become final, but only as to facts and circumstances as they existed on December 13, 1961. The award of alimony pendente lite entered by the trial court on May 29, 1962, was an entirely new and different proceeding based upon a showing that plaintiff under the facts and circumstances as they existed on said date was entitled to such temporary alimony. Civil Rule 88.03, which governs this matter instead of § 452.070 RS 1959, V.A.M.S., provides for permanent alimony when a divorce shall be adjudicated, and then provides as follows: "The court, on the application of either party, may make such alteration, from time to time, as to the allowance of alimony and maintenance, as may be proper, and the court may decree alimony pending the suit for divorce in all cases where the same would be just, whether the wife be plaintiff or defendant, and enforce such order in the manner provided by law in other cases."

In the case at bar the parties and the trial court have regarded the order of May 29, 1962, as a modification of the order of December 13, 1961. This is not strictly true, since no allowance was made on December 13, 1961. Rather it should be regarded as an independent order based on the changed conditions that existed on May 29, 1962. Under such circumstances the court had jurisdiction to deal with the matter and make such orders as the facts and circumstances then required, regardless of rulings on former motions. Libbe v. Libbe, 166 Mo.App. 240, 148 S.W. 460.

■ It is next urged that the trial court abused its discretion in entering the award for the reason that plaintiff failed to show a change in her financial condition, and further that, taking into consideration the debts, taxes and expense with which defendant is burdened, the amount allowed was grossly excessive. To this we cannot agree. The evidence clearly shows that plaintiff's resources have been depleted to the point where she is unable to maintain herself in the manner to which she was accustomed, even when supplemented by her present meager earnings. Furthermore, she was not under the law compelled to sell the small remaining assets possessed by her before being entitled to the relief sought. Rush v. Rush, Mo.App., 284 S.W.2d 53. It also clearly appears that her earnings of $130.00 per month is not sufficient to maintain her according to the standard to which she was entitled as wife of the defendant. In fact, defendant admitted this while on the stand. The evidence further showed that at the time of the hearing she was ill and in need of medical and dental care which would justify a finding that the expense in connection therewith would probably absorb her remaining assets.

■ It may be true that on account of the extravagant manner in which defendant

lives he is unable to meet the payments to his wife out of income. But this is not a sufficient reason for denying the wife an allowance for her support. As stated in McCarthy v. McCarthy, Mo.App., 329 S.W.2d 236, 1. c. 241: "It has long been the rule in this State that the total financial position of the husband is properly before the trial court and should be considered in determining his ability to pay such awards. * * *

"We cannot agree with appellant that his income should be given primary consideration by the trial court when making an award for alimony pendente lite. We believe that the correct rule is that the husband's financial position, income and property should be considered as a whole when determining his ability to pay such award. In no event should the consideration given to the husband's income be allowed to outweigh the needs of his wife and family, but each should be equally weighed in arriving at a proper award."

Considering defendant's financial position and all the other facts and circumstances, we cannot say that the amount awarded in this case constitutes an abuse of discretion by the trial court.

■ Plaintiff has moved for the assessment of a penalty against defendant for vexatious appeal under the provisions of Civil Rule 83.13(d). This section should be applied with caution and should not be invoked against an appellant where the appeal presents a fairly debatable question of law or fact. Whited v. Guarantee Trust Life Insurance Co., Mo.App., 237 S.W.2d 915, or where it appears there are reasonable grounds for the appellant to believe he has a bona fide appeal. Bidleman v. Morrison Motor Freight Co., Mo.App., 273 S.W. 2d 745. In view of the facts shown by the record in this case, we believe the motion should be denied. It is so ordered.

The judgment appealed from is affirmed.

RUDDY, P. J., and WOLFE, J., concur.