Lois O. HARRIMAN, (Plaintiff) Respondent,

v.

John W. HARRIMAN, (Defendant) Appellant.

No. 31589.

St. Louis Court of Appeals.

Missouri.

May 18, 1965.

Rehearing Denied June 21, 1965.

Application to Transfer Denied
Sept. 13, 1965.

See also 393 S.W.2d 106.

**104**

Joseph J. Howard, Kirkwood, Harry C. Avery, St. Louis, for appellant.

Norman Bierman, Stuart M. Haw, Jr., Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, for respondent.

WOLFE, Judge.

This is an appeal from a judgment modifying a divorce decree by increasing an award of alimony from $150 a month to $400 a month. In addition to increasing the alimony, the judgment which modified the decree also made an award of attorney's fees and suit money.

The history of the litigation here involved started in August of 1944, when Lois Harriman brought suit against John W. Harriman for divorce. John W. Harriman filed an answer and cross-bill, but later dismissed the cross-bill, and the cause was submitted to the court on the plaintiff's petition.

On March 8, 1945 the court granted plaintiff a divorce, awarded her custody of the three children born of the marriage, and provided that defendant pay the plaintiff alimony in the sum of $70 per month and support money for the children in the sum of $95 per month.

The next step in the litigation occurred in October, 1946, when the defendant sought to have the decree modified by awarding the custody of the three minor children to him. In this action by the defendant the plaintiff also sought a modification. She stated that her oldest son, who had reached the age of eighteen, expressed a desire to live with his father, and that she was willing to abide by his wishes in the matter. She further asked permission of the court to keep the two younger children in Evanston, Illinois, where she then resided. On January 23, 1947, the motions were heard and the decree was modified granting custody of the oldest son to the defendant, and granting permission to the plaintiff to remove the two younger ones to Illinois. The support money for the children to be paid to the plaintiff was reduced from $95 to $70.

The next action taken was in 1952, when a motion was filed by the plaintiff to modify the decree by increasing the alimony award and the support money for the 16-year old son, who was the only remaining minor child then in her custody. This eventually reached the St. Louis Court of Appeals where, in Harriman v. Harriman, 281 S.W.2d 566, it was adjudged that the decree should be modified awarding plaintiff $150 a month as alimony and $125 a month for the support of the child. In January, 1957 the decree was again modified by terminating the allowance of $125 for child support upon motion of the defendant, as the child at that time had reached his majority.

All of the foregoing is but a prelude to the motion to modify the decree filed

by the plaintiff in 1962, which we are here considering.

The motion alleged that the plaintiff had been in failing health for a period of several years, and that her physical condition has worsened and deteriorated to the extent "that she has been and is presently suffering from hypertension, gall bladder disease, diabetes mellitus and a heart ailment and disease diagnosed as angina pectoris, which conditions have become disabling, and that she has been ordered by her doctor to discontinue all work, and in fact is no longer physically able to work and to support herself."

The petition further alleges "that defendant's wealth and income has greatly and materially increased through inheritance and otherwise over the amount he owned and earned at the time the aforementioned allowances for alimony were made, and that the condition of the parties has changed by virtue of the facts stated."

In the year 1952, when the plaintiff first sought an increase in the alimony awarded her, she had an income, exclusive of alimony, of about $3,700 a year. With the alimony of $150 per month awarded her by the order of this court, in Harriman v. Harriman, supra, she then had a total income of $5,500. The evidence, as it relates to her present condition, is that the illnesses from which she has suffered have grown progressively worse, requiring frequent medical attention with a continuing need for medicine and dietary foods. She is now unemployed and has no income except the $150 per month alimony. Her net worth was about $2,900, which was her equity in an old house in which she lived and attempted to keep boarders. The physicians who treated her said that she could no longer continue in the work she had been doing. She is not employed and, as stated, she has no income other than the $150 a month alimony.

The defendant testified that his gross assets, exclusive of gas, oil, and mineral rights on his Texas farm land, amounted to more than $168,735. The gas, oil, and mineral rights, excluded from the above sum, yielded him an income of $44,480 for the year prior to the hearing below. His net income after taxes for the year preceding the hearing was $40,575.68.

The appellant contends that the court erred in allowing alimony in the sum of $400 per month, and predicates his charge of error on the theory that there had been no substantial change in the circumstances of the parties since the last modification. It is asserted that the plaintiff's unemployment is of her own choice and not due to ill health. For this conclusion the defendant relies upon a statement by a medical witness, Dr. Joseph D. Croft, who testified:

"I think she could handle a light job that didn't require her to be on her feet all the time. I think she could. But, you see, most jobs have a lot of emotional stress unless you have some place where you are tucked away by yourself, you don't have contact with people."

He was later asked: "Q. Well, then, to summarize and to clarify this question of her working or of her job, I believe that you have stated why you do not recommend that she has any job at the present time and in the future if she works she should avoid contact with people; that she should be under no pressure or mental strain; that she should not work on her feet; that she should only work for short hours and that she should work close to home to avoid the physical exertion of getting to work; is that right, doctor?

\*     \*     \*     \*     \*     \*

"A. I think I have said all these things."

■ This is certainly no evidence that a sixty-year old woman is voluntarily avoiding work. She had been asked to resign from the position which she held for many years because she could no longer do her

work, and the fact that she might be physically able to hold some small hypothetical job is no evidence that such a position is available or that she would have the mental qualifications for the work if it were available. The physician who examined her at the request of the defendant stated that she suffered from high blood pressure and coronary insufficiency, with a history of diabetes. He said further that the condition of hypertension had probably existed for about ten years, and that the conditions were very progressive. He concluded by stating that she was in a dangerous physical condition.

This was adequate proof that there had been a change of circumstances as to the plaintiff's condition since the modification in 1953. The evidence leaves no doubt about the ability of the defendant to pay the sum awarded. It cannot be said to be excessive since the annual sum of $4,800 which plaintiff would receive under the award is less than the $5,500 which she had in 1955. We considered that sum necessary then and awarded alimony in the sum of $150, so that with her earnings she would have an annual income of $5,500. Her needs are greater now, and her income will actually be less. We see no merit in the points raised in this respect. Other points raised in relation to the award of alimony are similar to those raised and fully disposed of by this court in Harriman v. Harriman, 281 S.W.2d 566. No purpose would be served by restating them.

The court also allowed attorney's fees and suit money, and it is contended that the amount allowed is excessive. The plaintiff lived in Chicago, and her case was presented by depositions and interrogatories of considerable length. Numerous exhibits were also presented. Mr. Norman Bierman, trial counsel for the plaintiff, testified as to the amount of time put in by him and by counsel in Chicago. He stated that the value of his services was $3,000. He introduced an itemized statement of the work which he had done and the hours

devoted to it, which amounted to 96 hours over a period of 78 days. He also requested a fee of $1,543.75 for the Chicago counsel and the sum of $781.26 suit money that had been advanced. The defendant offered no evidence in relation to the value of the services rendered, and the court made an award of attorney's fees of $2,700 for Mr. Bierman and $1,100 for Mitchell Davis, the Chicago attorney. It further awarded the sum of $750 suit money. The evidence supports the award, and the contention that it is excessive is without merit.

For the reasons stated, the judgment is affirmed.

RUDDY, P. J., and JAMES D. CLEMENS, Special Judge, concur.

ANDERSON, J., not participating.