In re the MARRIAGE OF Patricia POWERS, Appellant-Respondent,

and

Robert Powers, Respondent-Appellant.

Nos. 36328 and 36345.

Missouri Court of Appeals,
St. Louis District,
Division One.

Sept. 16, 1975.

Paul Brackman, Brackman, Copeland, Oetting, Copeland, Walther & Schmidt, Clayton, for respondent-appellant.

Maureen Swihart, Klamen, Summers & Compton, Norman W. Drey, Jr., Clayton, for appellant-respondent.

DOWD, Judge.

Both parties to a suit for dissolution of marriage appeal the trial court's amended decree of June 17, 1974 as it relates to various aspects of a maintenance award, division of marital property, child custody and allocation of attorney fees.

The wife objects to the trial court's decree on three grounds: 1) that the husband was given an excessive amount of temporary custody; 2) that the amount and duration of the maintenance awarded was unreasonable, and 3) that the husband was awarded an excessive amount of marital property. The husband, in turn, argues that the trial court erred by including as marital property his interest in his company's profit-sharing plan, his stock interest in the company, and, finally, in failing to rule that a loan made by his mother was a lien against the marital home for which the wife should be responsible. He also objects to the award to the wife of $8,000 in attorney fees. We decide on appeal whether the trial court abused its discretion in ordering any of these provisions. *Hinson v. Hinson*, 518 S.W.2d 330 (Mo.App.1975); *Page v. Page*, 516 S.W.2d 537 (Mo.App.1974). We also consider the adequacy of the award. *Phillips v. Phillips*, 219 S.W.2d 249[10] (Mo. App.1949); *Jenkins v. Jenkins*, 396 S.W.2d 268[7] (Mo.App.1965).

The wife filed suit for divorce against the husband, on May 8, 1972, after 10 years of marriage. The proceedings, which began February 14, 1974, are governed by the new Missouri dissolution of marriage statute, §§ 452.300–452.415, RSMo.Supp.1973,[1] since a judgment had not been rendered prior to January 1, 1974.[2]

The record is complete as to the financial conditions of both parties. The husband's gross income, primarily from the company he operated with two partners, had exceeded $90,000 for each of the preceding three years. In addition, he enjoyed certain fringe benefits such as payment of 90% of his car expenses and 60% of his membership in a tennis club. The husband estimated his

---

1. Statutory references are to RSMo.Supp. 1973 unless otherwise indicated.

2. For an excellent analysis of maintenance and support under the new Dissolution of Marriage Statute see an article in 29 Mo.Bar Journal 516 (1973) by Mr. Robert G. Ruhland, Director of Judicial Administration for the St. Louis County Circuit Court.

expenses to be $15,600. The wife had sold her house shortly after the marriage and used the proceeds to help her husband start an import business. The business was unsuccessful and closed within two years after its beginning. The wife had had some experience in the fashion field, but had not worked except for an occasional, special job, since the birth of the parties' son, a year after the marriage. The wife testified she was working at the time of the trial as a fashion coordinator and earned $800 a month after working for one year. She also testified that she did not want to work and preferred to stay home with her son, who was nine years old at the time of trial. She estimated her monthly expenses to be $2,320. A substantial amount of such expenses represent costs for her son including music, sport lessons and private schooling.

The trial court modified its original decree of dissolution of marriage after considering motions by both parties. The amended decree awarded maintenance of $300 a month to the wife until her son reached the age of 16 (a period of 7 years) and $700 a month in child support. The trial judge divided the various pieces of real estate, personal property and intangibles which were deemed marital property and awarded property valued at $95,811 to the wife, including the marital home valued at $42,000. The husband was awarded marital property worth $107,500. The husband was also directed to pay the wife's attorney's fees in the sum of $8,000. Finally, the modified decree awarded primary custody of the couple's child to the wife with the husband having temporary custody as follows: 1) from 4 p. m. each Tuesday until 9 a. m. each Wednesday; 2) from 5 p. m. Friday until 7 p. m. Sunday on the 1st and 3rd weekends of every month; 3) from 2 p. m. Saturday until 7 p. m. Sunday on the fourth weekend of each month; 4) three weeks each summer; 5) on Christmas Eve each year, on Thanksgiving Day in even numbered years and on Easter on odd numbered years.

The first point in issue, which is the extent of temporary child custody to the father, is governed by § 452.375 of the new Missouri divorce law.[3]

■ The overriding consideration in determining child custody under the new law as well as the old, is the best interest of the child. It has been the rule that the appellate court will not disturb the trial court's custody order unless it is clearly erroneous and the welfare of the child requires a different disposition. *Glaves v. Glaves*, 523 S.W.2d 169 (Mo.App.1975); *J.L.W. v. D.C.W.*, 519 S.W.2d 724, 729–730 (Mo.App.1975); *Northrup v. Sieve*, 517 S.W.2d 470, 473 (Mo.App.1974); *Wood v. Wood*, 400 S.W.2d 431, 436–437 (Mo.App. 1966). Due regard must be given to the trial court's opportunity to judge the credibility of witnesses, *R.L.S. v. J.E.S.*, 522 S.W.2d 5, 7 (Mo.App.1975), and to evaluate the intangibles which do not appear in the record in child custody cases. *Graham v. Graham*, 428 S.W.2d 941, 944 (Mo.App.1968). The wife argues that the trial court abused its discretion in granting the husband excessive temporary custody. The main thrust of her argument is that the son's best interests will not be served by having him frequently shift back and forth between his parents. We hold that the trial court did not abuse its discretion in awarding this extent of temporary custody to the husband. The wife refers us to the language of the Wood case, which says:

3. § 452.375. "The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:
(1) The wishes of the child's parents as to his custody;
(2) The wishes of a child as to his custodian;

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;
(4) The child's adjustment to his home, school, and community; and
(5) The mental and physical health of all individuals involved."

"Generally speaking, except for good reason, the child should not be shifted periodically from one home to another and as in most instances the interest of the child is best served from a standpoint of stability if one or the other parent is given full custody with reasonable visitation rights to the other parent." *Wood v. Wood, supra*, at 437.

The *Wood* case, however, is readily distinguishable from the instant case. In *Wood*, this court was reversing an order of the trial court which provided that exclusive and undisturbed custody would change from one parent to the other each year. The child would have been shifted back and forth for alternate periods of full custody. In the present case, the wife has full custody while the husband has limited, temporary custody on enumerated days, which might be compared to the "reasonable visitation rights" referred to in the *Wood* case. Similarly in the case of *M . . . L . . . v. M . . . R . . .*, 407 S.W.2d 600 (Mo.App.1966), there was a significant reduction in the amount of custody time awarded to the mother, including the elimination of one weekend each month. In that case, both parents had asked for an arrangement with less frequent changes of custody.

 A child should ideally have well founded association with both of his parents. In *Schumm v. Schumm*, 223 S.W.2d 122 (Mo.App.1949), it was held that the rights of both parents must be respected with the court stating, l. c. 125:

". . . that where both parents are proper persons, not only do both of them have the right to reasonable access to the child, but in fact the child's best interests will be served by making it possible for it to receive the benefits to be derived from association with both its parents."

The appellate court will change the trial court's custody decree if it determines that the visitations with the father are of unreasonable frequency or duration. *Wagner v. Wagner*, 465 S.W.2d 655 (Mo.App.1971). In *Wagner*, the court decided that visitation with the father one weekend every two months, one week in the summer and three days in December was insufficient and increased it to one weekend a month, two weeks in the summer and three days in December. However, each child custody case must be decided on its facts, and it is difficult to compare the types of awards which are made. The wife refers us to several cases, including *Wagner*, to illustrate that the extent of the temporary custody in this case was unprecedented and unreasonably excessive. But in light of the testimony of the wife and husband at trial, we are not prepared to say that the trial court abused its discretion in awarding the husband the temporary custody of the son as set out above. There is evidence that the husband has a healthy, close relationship with his son and spends considerable time playing with and coaching him in sports. The son also has the occasional opportunity to see his older half-sisters and half-brother when he is at his father's home or in his father's custody. The husband also explained at trial his reasons for wanting custody of the son on Tuesday nights. The mid-week visit would provide the father and son relationship with needed continuity and allow the father to help his son with his homework on a regular basis. The wife argues that the extent of the husband's custody deprives her of her son's companionship on any permanent basis. But this is not true since she will have custody 1½ weekends a month, four nights a week, all but three weeks during the summer and on most holidays. The allocation of custody time between the two parents, both of whom appear to be fit and proper persons, seems to be both a reasonable compromise and, most critically, in furtherance of the child's best interests.

 The second issue concerns the wife's contention that the trial court abused its discretion in awarding her only $300 a month maintenance and terminating maintenance altogether when her son reaches 16 (7 years after the trial). The award of

maintenance is governed by § 452.335.[4] The statute clearly gives the trial court a great deal of discretion. It may grant maintenance only if the two conditions specified are present. The court has discretion as to amounts and the duration of maintenance payments after considering various factors, including, but not limited to those enumerated within the statute.

Our review in a dissolution of marriage case is the same as it was in a divorce case. It is the duty of the appellate court to review the case de novo upon both the law and the evidence, giving due deference to the trial court's assessment of the credibility of the witnesses. While the judgment of the trial court should not be set aside unless erroneous, "such is not a mandate prescribing judicial 'blindness' because in reviewing this case de novo this court must be cognizant of the further duty to reach its own conclusions based on the law and the evidence presented by the case." *L_____ J_____ S_____ v. V_____ H_____ S_____*, 514 S.W.2d 1, 4 (Mo.App.1974). The deference accorded the trial court's findings will vary, depending on the importance of the parties' credibility to a proper determination of the issue. *J. v. K.,* 419 S.W.2d 461, 466 (Mo.App.1967). It is the duty of the appellate court to review all of the evidence and reach its own conclusion as to the proper judgment to be entered. The court is to enter such judgment as the trial court should have entered. *Glaves v. Glaves,* 523 S.W.2d 169, 172 (Mo.App.1975). Therefore, when an appellate court finds the awarded amount to be inadequate, it will order the amount increased. *Phillips v. Phillips,* 219 S.W.2d 249 (Mo.App.1949); *Jenkins v. Jenkins,* 396 S.W.2d 268[7] (Mo. App.1965); *Howard v. Howard,* 171 S.W.2d 92 (Mo.App.1943); *Bowzer v. Bowzer,* 236 Mo.App. 514, 155 S.W.2d 530 (1941); *Vordick v. Vordick,* 205 Mo.App. 555, 226 S.W. 59 (1920). In the present case, the record is quite complete as to all the relevant factors, and on the basis of the information in the record and for the reasons which follow, we find that the wife's award for maintenance is inadequate and should be increased from $300 to $500 per month and that there should be no provision for termination of the award at this time.

The husband does not challenge the fact that the wife is entitled to some award of maintenance under § 452.335, subd. 1. An analysis of the (nonexclusive) factors enumerated in § 542.335, subd. 2 supports the increase to $500 a month. First, examining the financial resources of the wife and her ability to meet her needs independently, we find that her estimated expenses total $2,320 while she earns only $800 a month. It is true that her share of the marital property is valued at approximately $96,000. But the bulk of her marital property consists of a home, its furnish-

---

**4.** Under § 452.335 ". . . The court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

2. The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The standard of living established during the marriage;

(4) The duration of the marriage;

(5) The age, and the physical and emotional condition of the spouse seeking maintenance;

(6) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(7) The conduct of a party seeking maintenance during the marriage."

ings and a car which she needs in order to maintain the standard of living that was established during the marriage. (See § 452.335, subd. 2(3)). The remainder of her part of the marital property, consists of three small pieces of real estate, two promissory notes and two shares of stock which probably do not produce a substantial amount of income. This court has previously decided before passage of the new Dissolution of Marriage Statute that a divorced woman who is unable to maintain herself in the manner to which she became accustomed during marriage need not sell her small remaining assets before being entitled to alimony. *Butler v. Butler,* 379 S.W.2d 175, 180 (Mo.App.1964). The holding of the *Butler* case continues to be appropriate under the new law. Likewise, the Legislature specified in the law that the trial court shall consider the standard of living established during the marriage as a factor in determining the amount of a maintenance award (452.335, subd. 2(3)).

Secondly, the statute requires that we look at the time necessary for the wife to acquire sufficient training to find suitable employment. She is already working at a job for which she is adequately trained. Third, the standard of living established during the marriage is rather high. The parties lived in an expensive house, employed a maid and a gardner, took numerous vacation and business trips, belonged to tennis clubs, and enjoyed numerous sports events. Prior to the enactment of the new statute, it was determined that a wife was entitled to continue to live in the manner to which she had become accustomed if the former husband had sufficient means to provide such support. The former standard of living has always been one of several factors considered in setting the amount of the award. *Mortensen v. Mortensen,* 469 S.W.2d 852, 855 (Mo.App.1971); *Butler v. Butler,* 379 S.W.2d 175, 180 (Mo.App.1964). In view of the other facts of this case, there is no reason why the wife should not continue to enjoy a suitable standard of living to which she was accustomed. This is particularly true in light of the fourth factor, i. e., the marriage was of 12 years' duration at the time of the decree. Fifth, the wife was 49 years old at the time of the decree, so, although she was in good physical and mental condition, she probably would not advance any considerable degree in her field as fashion coordinator. Sixth, the husband has the ability to meet his needs while meeting those of the wife's, since his annual income is over $90,000. Finally, the conduct of the wife during the marriage was, from all the evidence, pristine.

■ Considering these factors, we conclude that not only should the maintenance award be $500 per month, but that there should be no provision for termination at this time. It is true that the trial court has the power to set a maintenance order "for such periods of time as the court deems just." § 452.335, subd. 2. We find, after a consideration of the factors specified in Section 452.335, subd. 2, that the trial court erred in ordering all maintenance payments to cease after seven years time. The trial court had no evidence before it that the circumstances of the parties would be markedly different in seven years. Even if the wife reduces her standard of living somewhat, her income shows no likelihood of catching up with her living expenses. The wife is not likely to advance to any appreciable extent in her career because of her age and the nature of her employment. She is already adequately trained for her job. The husband's income shows no likelihood of diminishing in the future and is sufficient to comfortably provide for his own needs while providing maintenance for his former wife. All the evidence indicates that the wife's financial prospects will not improve dramatically in the future and that the husband's means will not suffer in the future. Given this situation, the court should not speculate that in seven years the wife's income could meet her living expenses and that the husband's income would no longer be sufficient to provide for his own needs while providing maintenance. Such a determination should be made in the

future in a proceeding for modification of the award when the court would have evidence of any changed circumstances before it.

Our conclusion that the initial maintenance order should not include a termination date is supported by a recent California decision under a comparable statute. The 1970 California divorce statute provides, in part, as follows:

"In any judgment decreeing the dissolution of a marriage or a legal separation of the parties, the court may order a party to pay for the support of the other party any amount, *and for such period of time,* as the court may deem just and reasonable having regard for the circumstances of the respective parties, including the duration of the marriage, and the ability of the supported spouse to engage in gainful employment without interfering with the interests of the children of the parties in the custody of such spouse . . ." California Civil Code, Section 4801(a). (Emphasis added).

The foregoing statute was interpreted in *In re Marriage of Rosan,* 24 Cal.App.3d 885, 101 Cal.Rptr. 295 (1972). The trial court had awarded the wife $400 per month the first year, $300 per month the second, $200 per month the third and nothing thereafter. The court reversed, holding that the wife was entitled to a larger amount and that any change in the award should come later, on a motion for modification, only in the event of changed circumstances. The wife was not then employed and was about to take courses in real estate. The court found that her future earnings were unknown, and, therefore, any changes in the maintenance should be made later when they could be based on reasonable inferences from the evidence, rather than on mere hopes or speculation. *In re Rosan,* 24 Cal.

App.3d 885, 896, 101 Cal.Rptr. 295, 303. The California court also noted that in a long-time marriage, where a wife has been unemployed, she has not only failed to develop her own earning capacity, but has presumably contributed to the development of her husband's earning capacity, which has become the most valuable economic asset of the marriage. *In re Marriage of Rosan,* 24 Cal.App.3d 885, 898, 101 Cal.Rptr. 295, 304.[5] We agree with the view expressed in the *Rosan* case and find that the maintenance award should be $500 a month until modified upon application.

■■■ Our decision should not be interpreted as a denial of the trial court's authority to make maintenance awards of limited duration. On the contrary, the new statute specifically granted the trial judge this authority. However, awards of limited duration should not be based on speculation as to the future conditions of the parties. Awards of limited duration are entirely proper where the trial court has before it evidence of some impending change in the financial conditions of the parties or at the least some reasonable expectation that such a change will occur.

■■■ The next issue concerns the division of marital property controlled by § 452.330. First, the wife argues that the award to the husband of property valued at $101,500, from a total of $197,311 in marital property was excessive. Her basic argument is that the type of property awarded to the husband is more marketable than that awarded to her. We find that the award to the husband was not excessive. The statute does not comment on what type of division should be made of income-producing property or more readily marketable property. Nor is it controlling that the husband admitted to adultery. His conduct during the marriage is only one factor to be

---

**5.** Subsequent California appellate decisions have distinguished *Rosan* where there had not been a high standard of living during the marriage and the husband did not have a large income. *In re Marriage of Patrino,* 36 Cal.App.3d 186, 111 Cal.Rptr. 367 (1974); *In*

*re Marriage of Dennis,* 35 Cal.App.3d 279, 110 Cal.Rptr. 619 (1973), and where the wife was a doctor with a substantial income of her own. *In re Marriage of Cosgrove,* 27 Cal.App.3d 424, 103 Cal.Rptr. 733 (1972).

considered under § 452.330, subd. 1(4).[6] We cannot find an abuse of discretion in awarding the husband slightly more than half of the total value of the marital property.

The husband, on the other hand, argues that the wife was given an excessive amount of marital property by virtue of the trial court's decision as it relates to three specific items. The husband states initially that the trial judge strove for parity but failed to achieve it because of incorrect characterization of the three items. We observe that it is not necessary that there be parity in the division of marital property. *Reed v. Reed,* 516 S.W.2d 568, 570–571 (Mo.App.1974); Symposium on Dissolution of Marriage: Property Provisions, Fowler and Krauskopf, 29 Mo.Bar Journal 508 (1973). This is particularly true here, where the husband has admitted to improper conduct during the marriage. § 452.330, subd. 1(4). But we will examine each of the husband's contentions in order to decide if there was anything incorrectly characterized as marital property.

The husband's first argument is that his interest in the profit-sharing plan of his company was improperly included as marital property. Under § 452.330, subd. 3, "All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property. . . ." The husband does not argue that this presumption is overcome by one of the methods listed in subsection (2). But he argues in effect that his interest in the plan is not definite enough to be "property" within the meaning of the statute. He states that he has no use of the funds until he retires or leaves the employment of his company and therefore his interest in the plan cannot be considered without allowing for a resulting loss of earned income. The husband cites *Robbins v. Robbins,* 463 S.W.2d 876 (Mo.1971), as authority for his position. In that case,

the court held that the present value of possible future pension benefits under a police pension system was not a present asset and therefore could not be considered in making an award of alimony. The husband's interest in the police pension fund in *Robbins* is clearly distinguishable from the husband's interest in the plan in this case. In *Robbins,* if the husband would have resigned before the designated retirement age, he would have received only his own contribution and no part of the city's contribution to the fund. The court held that although his interest could be viewed as "vested" in some sense, it was too speculative to be a present asset since it could be divested by contingencies. In the instant case, on the other hand, Article IX of the profit-sharing plan reveals that the husband has a present interest in his company's contribution which is not subject to divestment, since he had participated in the plan for 5 years. Therefore, we hold that the trial court did not err in determining that the husband's interest in the plan is part of the couple's marital property under Section 452.330.

The husband's second argument concerning the division of marital property is that the trial court erred in finding that the stock he owned in his company was marital property. The contention is that the presumption of § 452.330, subd. 3 is overcome since this stock is "property acquired in exchange for property acquired prior to the marriage" under § 452.330, subd. 2(2). We hold that the husband has not carried his burden of proof in order to overcome the presumption that this stock is marital property. The husband argues that he had a substantial business prior to the marriage and that it merely changed in its legal form from sole proprietorship to a corporation subsequent to the marriage. This is a possibility, but it is also possible that the change was one of substance rath-

---

**6.** Clearly, as before the new Dissolution of Marriage Law, marital misconduct should not serve as basis for awarding excessive alimony for punishment. *McM. v. McM.,* 506 S.W.2d 14 (Mo.App.1974).

er than form. We can find no evidence in the record of the value of the sole proprietorship at the time of marriage or at the time of the formation of the company after the marriage. In fact the indirect evidence which exists on this point would seem to indicate that the sole proprietorship was not a substantial asset at the time of the marriage. The wife sold her home in order to put the proceeds into an import business with her husband shortly after their marriage. The husband testified that he borrowed money from his mother in order to buy his home in 1964 two years after the marriage. It would be pure speculation on our part to find that the husband's business interest underwent a mere change in form after his marriage. He has simply failed to overcome the presumption that the stock in his company is marital property.

■ The husband's final contention concerning the marital property is that the trial court erred in failing to find that the loan made by the husband's mother was not a lien against the marital domicile. The husband admits that the loan would not be enforceable against a third party, but he contends that since the loan was made for the specific purpose of enabling the couple to buy the home, the wife should be given the responsibility of paying off the loan. This is a logical argument since the wife was awarded the home and was given responsibility for paying off its mortgage. But there is nothing which requires the court to specify that the wife should pay off the loan from the husband's mother. This is particularly true since the testimony reveals that the wife was only vaguely aware of the loan and never saw the papers and did not know the size of the loan. Under these circumstances, we cannot find that the trial court erred in providing that the husband must pay the loan from his mother.

The final issue concerns the allowance of $8,000 in attorney fees to the wife. It is asserted that this is an excessive amount to charge against the husband. Section 452.-355 provides that the court "after consider-

ing all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount" for the legal services rendered to the other party. The husband maintains that the wife was a "difficult and demanding client" who made excessive demands on her attorney's time; that this is a "relevant factor" and therefore she should be made to pay at least part of her attorney fees. We find that under the circumstances of this case, the trial court did not abuse the discretion given it under the statute in requiring the husband to pay the full amount of his ex-wife's fees.

■ The trial court has more authority under § 452.355 than it had prior to the enactment of the new statute. The new act authorized attorney fees for either husband or wife. The traditional test for allowance of attorney fees in divorce cases is whether the wife is possessed of sufficient means to prosecute the suit on her own, for if she had the means, the husband would not be required to pay for her fees. *L__ J__ S__ v. V__ H__ S__*, supra at 9; *Toth v. Toth,* 483 S.W.2d 417, 422 (Mo.App.1972); *Engler v. Engler,* 455 S.W.2d 36, 43 (Mo.App.1970). The award could not be excessive or unreasonable. Therefore, the test both before and after the enactment of the new statute (§ 452.355) was whether the attorney fee was excessive or unreasonable. After examining the cases decided before the enactment of this statute and considering the evidence as to the financial resources of the parties, we do not believe the trial court abused its discretion in the award of attorney fees.

The cases cited by husband are distinguishable. In *Engler,* supra, where the wife was denied an award of attorney fees, the husband and wife earned the same gross income, the wife had a checking account to cover monthly bills and $1,000 in a savings account, while there was no evidence that the husband had any savings or checking account. Similarly, in *O'Brien v. O'Brien,* 485 S.W.2d 674 (Mo.App.1972), the wife had $15,000 in a savings account and earned more than the husband. In the case

before us, the husband earns more than $90,000 a year while the wife earns $9,600 a year. The marital property at her disposal consists of assets which are not readily liquidated. The trial court did not abuse its discretion in accepting the wife's testimony that she did not have assets available to pay her attorney's fees. See: *Larison v. Larison*, 524 S.W.2d 159 (Mo.App.St.L.1975); *McGinley v. McGinley*, 513 S.W.2d 471 (Mo. App.1974); *Lester v. Lester*, 452 S.W.2d 269 (Mo.App.1970).

The husband cites *Berbiglia v. Berbiglia*, 442 S.W.2d 949, 952 (Mo.App.1969) where the sum of $1,000 in temporary fees was held not excessive. This does not indicate what would be excessive. Neither is *Harriman v. Harriman*, 393 S.W.2d 103, 106 (Mo.App.1965), determinative. In that case, the award of $2,700 to an attorney for 96 hours of work which he testified was worth $3,000 was held not to be excessive. In the present case, the wife's attorney testified that he charges $50 an hour and his fee would be approximately $8,000. The fact that one lawyer charges $31 an hour while another charges $50 an hour does not make the higher amount excessive.

The husband's argument that his wife was a demanding client who took up an inordinate amount of her counsel's time and that this fact is a "relevant factor" to be considered in allowing for attorney fees is theoretically sound, but it is not adequately established that she was "difficult and demanding." Her attorney's testimony did not characterize her as such although, admittedly it would not be in his interest to do so. It is true that the attorney's bill included 140 telephone calls, but the attorney testified that many of the calls were initiated by him rather than the wife. On the record here we do not find the $8,000 award for attorney fees excessive.

In summary, we affirm the trial court's dissolution decree except insofar as it relates to the maintenance award. We remand with directions to order a maintenance award in the amount of $500 per month without a provision for termination.

WEIER, P. J., and RENDLEN, J., concur.